BOONE & SCARBOROUGH v. W. J. MILLER.

No. 41.

**1. Court House Door—Sale Under Deed of Trust.**

Our statute defines "court house door" as follows (article 2310, Revised Statutes): "By court house door of a county, is meant either of the principal entrances to the house provided by proper authority for the holding of the District Court; and where, from any cause, there is no such house, the door of the house where the District Court was last held in that county shall be deemed the court house door." A trust sale made under a power directing the sale to be made *at the court house door* held void, when not made at the house provided for the holding of the District Court, although made at the door of a house in which the County Court and the Commissioners Court held their sessions...  79

**2. Power to Sell by Trustee at Request of Payee.**

A power contained in a deed of trust to secure payment of a note therein described, authorized the trustee to sell the land so conveyed *at the request* of the payee named in the trust deed. *Held*, that under the power a sale by the trustee was void when made at the request of any other than the party named as having the authority to direct the sale.  80

**3. Subrogation.**

A void sale by trustee. Purchaser at the sale, who was the beneficiary in the trust, sold the land to another. The trust sale did not satisfy the debt. *Held*, that the sale of the land by the purchaser at the trust sale did not convey any equitable title to the debt for payment of which the attempted sale was made, and such purchaser is not subrogated to the rights of his vendor.................................  81

ERROR to Court of Civil Appeals for Second District, in an appeal from Mitchell County.

The opinion gives a full statement.

*J. B. Scarborough* and *J. D. Martin*, for plaintiffs in error.—1. Under the facts of this case Miller was a mere volunteer; did not purchase at request of debtor or creditor, with no interest of his own to protect, and buying with full knowledge of all the facts, he is not entitled to the benefit of the law of subrogation.

If the decision of the Court of Civil Appeals is maintained, it must be on the ground that Miller, in his purchase, was subrogated by operation of law to the rights of the lien holders at the time of the void sale. The court will observe that the bank purchased in February, 1885, and entered credit on the note. The record in appellate court shows that Upton paid balance due on the note and took it up. Three or more years later the bank made a quitclaim deed to Miller, with no assignment of any interest in the note; only such title as it held to the land it conveyed to Miller. Miller purchased on credit, as shown by the deed, and no evidence that the purchase money was ever paid by Miller. Miller purchased with full

knowledge of plaintiff's title, which was of record, and stipulated to take only such title as the bank held. The question then is, what did he get, if anything, by his voluntary purchase, other than such title as the bank held to the land.

We understand the rule on subrogation to be applicable only to creditors who pay encumbrances on their debtor's property to protect their own interest, or to junior lien holders who pay superior liens for their own protection, or in case of sureties who pay the debts of their principals.

We do not understand it to be applicable to a mere volunteer who pays his money with full notice of all the facts. Before a third party making payment of debts secured by a mortgage can be subrogated to the rights of the mortgagee, he must show either that he paid the debt at the request of the mortgagor, or to protect some interest he had of his own at the time of payment. 144 U. S., 587; Norton v. Higgleman, 5 West. Rep., 345; 88 Mo., 624; Allen v. Dormot, 80 Mo., 59; 119 Pa., 620; 29 W. Va., 480.

Sheldon on the Law of Subrogation, quoted with approval by the United States Supreme Court in 124 United States, 542, says: "It takes place for the benefit of a person, who being himself a creditor, pays another creditor whose debt is preferred to his by reason of privileges or mortgages, being obliged to make the payment, either standing in the situation of a surety, or that he may remove a prior encumbrance on the property upon which he relies to secure his payment. Subrogation as a matter of right, independent of contract, takes place only for the benefit of insurers, or one who, being himself a creditor, has satisfied the lien of the prior creditor. The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement of subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any right or property of his own."

The same court, in the same case, quotes with approval the definition by Chancellor Johnson, in which he says: "The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice, and from its very nature could never have been intended for the relief of those who were in any condition in which they were at liberty to elect whether they would or would not be bound, and so far as I have been able to learn its history, it has never been so applied. If one with perfect knowledge of the facts will part with his money or bind himself by contract, any rule of law which would restore him his money or relieve him from his contract would subvert the rules of social order. It has been directed in its application exclusively to the use of those who are already bound, who could not but choose to abide the penalty."

Miller was not so bound. He voluntarily went into the market to buy land, and bought with full knowledge of all the facts, and took a quit-

claim or special warranty deed, without any assignment or agreement to assign the note or any interest in it, or without any agreement that he was to be in any way subrogated to the right that Upton or the bank may have had, but deliberately cut himself off from any recourse of the bank in any way; risked his judgment on his title, and asked for nothing more. He did not purchase at the request of Reiger, who was bound to pay the debt, nor of Upton, to whom it was payable, but he was a volunteer in every sense of the term. The court will observe, that upon the payment of the note by Upton, and the delivery of the note to him by the bank, the bank itself no longer had any interest in or control over the note. The bank accepted the land as payment of the amount of its bill, and gave Upton credit for it.

In case of judicial sales, equity and public. policy demand that he whose money goes to the extinguishment of the lien, who fails to get title through a void proceeding, shall be subrogated to the rights of the judgment lien holder. But not so in the case of a mere volunteer at private sale. Ins. Co. v. Middleport, 124 U. S., 539, and authorities; Oury v. Saunders, 77 Texas, 279; Folts v. Ferguson, 77 Texas, 307, and authorities; 84 Texas, 112. A purchaser at sale for taxes is not subrogated to a State's lien. McCormick v. Edwards, 69 Texas, 107. A mortgagee of land upon which the State has a lien for the purchase money is not subrogated by the payment to the State. Moores v. Willis, 69 Texas, 114.

The opinion of the Court of Civil Appeals was based upon a distinct finding of that court that Miller took by assignment the note and deed of trust, but subsequent investigation of the record showed that Upton paid off the note and took it up, and upon further investigation the court receded from their finding as to assignment. Grady v. O'Reily, 22 S. W. Rep., 798.

The question presented to this court is, under the facts in this case, did Miller become by his purchase of the land subrogated to such rights as authorized him to direct a second sale by the trustee under the deed of trust, after all title had been divested out of Reiger, the mortgagor, and after suit had been instituted for the recovery of the land by these plaintiffs?

2. It is elementary that directions given in trust deeds as to time, place, and manner of sale must be strictly followed, or no title will pass. Hickey v. Behrens, 75 Texas, 497; Ryan v. Porter, 61 Texas, 106; Posey's U. C., 107; 48 Texas, 141; Stewart v. Brown, 22 S. W. Rep., 451; 59 Mo., 52; 70 Mo., 497; Jones on Mort., sec. 1907; 81 U. S., 982; 97 U. S., 968.

*Smallwood & Smith*, for defendant in error.—It is a substantial compliance with the law in sales of real estate under deeds of trust at the court house door of a county, that the sale is made at a place known as the

door of the court house in which the County and Commissioners Courts are held and the various county officers have their offices, even though the last term of the District Court was held at a different place. Patterson v. Reynolds, 19 Ind., 148; Perkins v. Spaulding, 2 Mich., 167; Kane v. McCown, 55 Mo., 181; Nixon v. Cobleigh, 52 Ill., 387.

*Watts, Aldredge & Eckford,* also for defendant in error.— 1. The court erred in his conclusions of law in finding that the sale of the lands on the 4th day of February, A. D. 1885, under the deed of trust, was void, it having been made at a place different from that prescribed in the deed of trust; because such sale is not void. but merely irregular, and is valid until set aside by a direct proceeding for that purpose. Williams v. Pouns, 48 Texas, 141; Webster's Dic., word "Court-house;" Larco v. Casaneuava, 30 Cal., 560; Lallance v. Fisher, 29 W. Va., 513; Graham v. Fittz, 55 Miss., 307; Jackson v. Von Dalfsen, 5 Johns., 44; Connolly v. Hammond, 51 Texas, 647.

2. Miller had such interest in the note as to authorize him to direct the second sale of the land, as the purchaser at the invalid sale had transferred the land to him. Robertson v. Du Bose, 76 Texas, 8.

BROWN, ASSOCIATE JUSTICE.—Boone & Scarborough sued W. J. Miller in the District Court of Mitchell County, in trespass to try title, to recover four sections of land situated in that county. W. J. Reiger was admitted to be the common source of title.

On the 19th day of December, 1884, Boone, Scarborough & Powell recovered judgment in the District Court of Mitchell County against W. J. Reiger for $1329, an abstract of which was duly filed and recorded in the proper office of said county on the 5th day of February, 1885. On the 2nd day of September, 1885, an execution was issued upon said judgment and levied upon the land in controversy, which was sold by the sheriff on the 6th day of October, 1885, and purchased by Scarborough for the benefit of Boone & Scarborough, Scarborough paying the bid, $25, of his own money. A deed was made by the sheriff to Boone & Scarborough in pursuance to said sale.

W. J. Miller claimed title to the land under the following chain of title: On the 22nd day of April, 1884, George J. Reiger executed a deed of trust to Winfield Scott as trustee, conveying to him in trust the lands in controversy, to secure the payment of a note due by Reiger to J. M. Upton for the sum of $2425, with 10 per cent interest from date, dated October 3, 1883, and due October 1, 1884. The deed of trust was recorded in the proper office of Mitchell County on the 29th day of April, 1884, and provided, that "upon default in the payment of the note and interest at maturity, the trustee, Winfield Scott, or in case of his refusal or inability to act, the acting sheriff of Mitchell County," is authorized

to sell said land at the request of James Upton made at any time after the maturity of said note, "the sale to be made at the court house door of Mitchell County, after publishing notice for twenty days."

Scott having refused to act, Ware, the sheriff of Mitchell County, sold the land under the deed of trust on the 4th day of February, 1885, and the Concho National Bank became the purchaser for the sum of $1700. The Concho National Bank then owned the note. The sale seems to have been regular, except that it was made at the door of a house used and occupied by the Commissioners Court and the County Court of the county for holding court, but the District Court was held at a different place, about 300 yards from that at which the sale was made. The Commissioners Court had entered an order designating the opera house as the court house and the place for holding the District Court.

Ware made a deed for the land to the Concho National Bank, and on the 3rd day of November, 1885, Reiger, by quitclaim deed, conveyed all of his interest, right, and title to J. N. Upton for an express consideration of $150, and on the 22nd day of December, 1885, Upton, by quitclaim deed, conveyed all of his right, title, and interest in the land to the Concho National Bank for consideration of $1.

In September, 1888, the Concho National Bank, for a consideration of $2300, paid by W. J. Miller, conveyed to Miller the land in controversy, one section being conveyed by quitclaim deed, and the other three sections conveyed by deed with special warranty.

On the 21st day of May, 1889, at the request of Miller, Ware, the Sheriff of Mitchell County, again sold the land under the deed of trust, at the court house door of Mitchell County, after due notice, and Miller bid the land in at the sum of $1100, but had not the possession of the note, and paid no money on his bid. Scott had refused to act in making the sale.

R. F. Powell, one of the firm in whose favor the judgment was rendered by virtue of which the sale was made under which Boone & Scarborough claim, transferred his interest in the judgment rendered in favor of Boone, Scarborough & Powell to Miller, the transfer being dated on the 19th day of June, 1889, and on the 23d day of April, 1890, Powell, by quitclaim deed, conveyed all of his right and title to the land to Miller.

The legal title to the land and the right of possession remained with Reiger, the maker of the trust deed, until the deed of trust was legally foreclosed, and the purchase of the land by Boone & Scarborough under the execution sale conveyed to them the legal title and right of possession, unless the sale under the trust deed made before the execution sale was valid; and the plaintiffs were entitled to recover unless the deed of trust had been legally foreclosed at one of the sales made under it. Mor-

row v. Morgan, 48 Texas, 304; Schmeltz v. Gary, 49 Texas, 49; Spring v. Eisenach, 51 Texas, 435; Silliman v. Gammage, 55 Texas, 369.

If either of the sales made under the deed of trust was valid, then the defendant in error, Miller, is entitled to the land, and the judgment of the Court of Civil Appeals should be affirmed; but if both of these sales were ineffectual to pass the title, then the judgment of the Court of Civil Appeals should be reversed and the judgment of the District Court affirmed.

The deed of trust required that the sale should be made at the door of the court house of Mitchell County; and if this was not done, then the sale was void and passed no title to the purchaser. Howard v. North, 5 Texas, 90.

From some cause not explained, there was no regular court house in Mitchell County. Our statute defines the meaning of "court house door" as follows:

"Article 2310. By the ' court house door ' of a county is meant either of the principal entrances to the house provided by proper authority for the holding of the District Court; and where from any cause there is no such house, the door of the house where the District Court was last held in that county shall be deemed to be the court house door. Where the court house or house used by the court has been destroyed by fire or other cause, and another has not been designated by the proper authority, the place where such house stood shall be deemed to be the court house door."

The Commissioners Court of Mitchell County was the proper authority to designate a place for the holding of the District Court, and that court had designated the opera house as such place. The land not having been sold at the place so designated, the sale was void and conveyed no title to the purchaser.

There is no evidence to show that Miller acquired any equitable right under the deed from Powell, and no pleading upon which such right could be considered in this case, if in fact it exists.

The sale of February 4 under the deed of trust being void, the legal title remained in Reiger. Boone & Scarborough's judgment was recorded on the 5th of February, the next day after the sale under the deed of trust. On the 6th of October the sale was made under execution against Reiger, at which Boone & Scarborough purchased. The deed from Reiger to Upton being made after the sale under execution, passed no title, and did not affect the right of Boone & Scarborough, and the Concho National Bank acquired no right or title to the land by the deed from Upton made on the 22nd day of December, 1885.

The right of Miller is therefore reduced to his title, if any, acquired under the last sale under the deed of trust. The deed of trust provides that the sale may be made " at the request of J. N. Upton made at any time after the maturity of the note." The last sale was made at the

request of W. J. Miller, and the question is, had the trustee the power to sell at his request?

The power of sale in a deed of trust is an important power, granted by the maker, and he has the right to place upon it such limitations and conditions as he may deem proper for his own protection.    When the exercise of a power is made to depend upon the direction or request of a given person, then the direction or request of that person must be given in order to authorize the exercise of the power.    18 Am. and Eng. Encycl. of Law, " Powers," p. 977, sec. 13; Richardson v. Crooker, 7 Gray, 190; Haymond v. Jones, 33 Gratt., 317.

Looking to the transcript, we find copied into the statement of facts that portion of the deed of trust which confers the powers to sell, with quotation marks, indicating that it is literally copied.    There is no provision for the sale to be made at the request of the holder of the note, which is common in such instruments, and the fact that such provision is omitted goes far to strengthen the conclusion that the purpose was to confide the authority to put the power of sale into active operation to Upton alone.    It may be that Reiger was willing to trust to Upton, believing that he would not direct the sale under improper circumstances; but no matter what the reason may have been, Reiger had the right to impose the limitation, and the court has no power to disregard it.

If, however, we give to the deed of trust the broadest construction claimed for it, that is, that the owner of the debt would be authorized to give the direction to the trustee to sell, Miller is in no better condition.    The sale of February 4, 1885, at which the Concho National Bank purchased, being void, the bank, by its bidding in the property, acquired no rights therein.    The parties after the sale stood as they did before the " ineffectual attempt at sale took place."    Jones on Mort., sec. 1902; Building Assn. v. Price, 53 Md., 401.

In the case cited, after stating the rights of a purchaser at a void sale who had paid the purchase money, the court says:    " But where, as in this case, the mortgagee becomes the purchaser at his own sale, the sale being void, he acquires no rights, either legal or equitable, by means of the sale.    In such case the parties stand as they did before the ineffectual form of sale; and all the costs and expenses attending such ineffectual sale must be borne by the mortgagee as the consequence of an unauthorized proceeding."

The debt was not satisfied by the sale at which the bank purchased. Monroe v. Buchanan, 27 Texas, 241.    After the void sale the bank owned the note and the mortgage, and Reiger owned the land until the execution sale was made, when Boone & Scarborough became the owners of the land, subject to the lien of the deed of trust.    The conveyance of the land to Miller by the Concho National Bank did not operate to transfer the debt and mortgage.    In Perkins v. Sterne, 23 Texas, 563, the court

says, quoting from 4 Kent: "'So on the other hand, an assignment of the interest of the mortgagee in the land without an assignment of the debt, is considered to be without meaning or use.' And the reason is, that the principal thing always draws to it that which is incidental or accessory; so that the principal thing can not take one direction, and that which is incident to it another direction." The conveyance by the bank to Miller did not operate to transfer to him the debt and deed of trust.

There is another reason why the ownership of the note did not vest in Miller by the conveyance from the bank. If it were true that the bid of the bank, $1700, was to be taken as a credit on the note, yet the note was for a much larger amount, $2425, with 10 per cent interest for more than a year, which would leave a large part of the note unpaid, and a subsisting debt in the hands of the bank, as against Reiger. Then the bank would remain the legal owner of the note. Whatever equities Miller may have, he was not the owner of the note.

The sale not having been requested or directed by Upton, as required by the deed of trust, and Miller having no authority, even as owner of the note, to direct it to be made, the power to make the sale was not exercised in accordance with the provisions of the deed of trust, and was therefore void and passed no title to Miller.

We see no reason why the deed of trust might not yet be executed in a proper manner, and Miller fully protected, in case the plaintiffs in error should not discharge the lien upon the land.

It is ordered by this court, that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed. It is further ordered, that the plaintiffs in error, Boone & Scarborough, recover of W. J. Miller and the sureties on his appeal bond all costs of this court and all costs of the Court of Civil Appeals and of the District Court.

Delivered October 13, 1893.