RAWLINGS et al. v. LEWIS et al.
(No. 1078.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 3, 1917. Rehearing Denied Jan. 31, 1917.)

1. MORTGAGES ☞342—TRUST DEED—SUBSTITUTION OF TRUSTEE.
Where attorney of assignee of notes secured by trust deed requested trustee to refuse to act so that the attorney might sell the property as substituted trustee, this was not a request by mortgagee to act and refusal by the trustee, as required by the trust deed before substituting another trustee; the holder of the notes having no such power under the deed.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1041; Dec. Dig. ☞342.]

2. MORTGAGES ☞342—TRUST DEED—RIGHTS OF TRUSTEE.
Where a trustee in a trust deed was authorized to sell only on the mortgagee's request, such power remained dormant until the proper request was made, and he could not give a

valid refusal to act to any one but the mortgagee.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1041; Dec. Dig. ☞342.]

3. MORTGAGES ☞342, 372(3) — FORECLOSURE SALE ON TRUST DEEDS—SUBSTITUTED TRUSTEE.
Where trust deeds, securing notes, authorized the trustee to sell on default of payment at mortgagee's request and gave mortgagee power to appoint a substitute trustee upon the trustee's refusal to act, the transferee of the notes had no authority to appoint a substitute trustee, and the deed of trustee substituted by him conveyed no title.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1041, 1106-1108; Dec. Dig. ☞342, 372(3).]

4. MORTGAGES ☞342—TRUST DEED—RIGHTS OF BENEFICIARY.
The beneficiary under a trust deed should not be permitted to create such conditions as will accomplish his own ends regardless of the original agreement.
[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1041; Dec. Dig. ☞342.]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Suit to cancel deeds by Etta Lewis and others against J. D. Rawlings and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Veale & Lumpkin, of Amarillo, and R. E. Stalcup, of Dalhart, for appellants. W. I. Gamewell, of Stratford, and Clifford Braly, of Dalhart, for appellees.

HUFF, C. J. The appellee, Etta M. Lewis, brought suit against J. D. Rawlings and D. E. Powel, to cancel four certain deeds, executed by R. E. Stalcup, as substitute trustee, to the four quarters of a section of land in Dallam county, alleging substantially that the deeds were executed without the power to do so, and that Stalcup was not, under the deed of trust, properly substituted for the trustee. The trial court, after the evidence was in, instructed a verdict for the appellee, plaintiff below, on the ground that Stalcup had no authority to execute the deeds to Powel, as substitute trustee. The jury, under his directions, rendered a verdict for the appellee, upon which verdict judgment was rendered for appellee canceling the four deeds, and decreeing the title in her to the entire section of land. The only assignment of error calls in question this action of the court instructing a verdict, and appellant admits that if the court was correct in so instructing the verdict, on the grounds stated, that the judgment was properly entered. There are a number of issues presented by the pleadings of the parties which will be unnecessary, under the assignments, to consider.

The appellee Etta M. Lewis has title by mesne conveyance to herself from J. D. Rawlings. Rawlings, some time previous to Miss Lewis' title, sold this land to one S. E. Gates, making separate conveyance to the four

quarters of the section and taking therefor on each quarter notes due in one, two, three, and four years, for $134.72 each. All the first three notes were paid, only leaving the last note, due four years after date, due on each quarter. To secure these four notes, S. E. Gates executed his certain deed of trust, naming W. B. Slaughter as trustee in the deed. This deed of trust was given separately on the four quarters, to secure the notes due on each. After setting out the conveyance and description of the property and the notes secured, the power is as follows:

"But, in case of failure or default in the payment of said promissory notes, together with the interest thereon accrued, according to their terms and face, at the maturity of the same, then in such event, said W. B. Slaughter is by these presents fully authorized and empowered and it is made his special duty, at the request of the said J. D. Rawlings, at any time made after the maturity of said promissory notes, to sell the said above-described property to the highest bidder for cash at public outcry," etc.

"It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed; and it is hereby specially provided that should the said W. B. Slaughter, from any cause whatever, fail or refuse to act, or become disqualified from acting as such trustee, then the said J. D. Rawlings, or other holder of said indebtedness, shall have full power to appoint a substitute in writing who shall have the same powers as are hereby delegated to the said W. B. Slaughter; and I, by these presents, fully and absolutely ratify," etc.

It is shown that Rawlings, on or about the 19th day of July, 1915, transferred the note last matured on each quarter to D. E. Powel, known as Ellis Powel, and that Powel at once placed the notes in the hands of R. E. Stalcup, as an attorney, to collect the same. It appears that after the execution of the deed of trust naming Slaughter as trustee, that he (Slaughter) moved from Dallam county to Dallas county. On July 20, 1915, R. E. Stalcup wrote to W. B. Slaughter in Dallas, Tex.:

"My dear Judge: About the year 1907 Judge Rawlings sold to one S. E. Gates four quarter sections of land in Dallam county, Texas, and took as security a deed of trust on each quarter to secure four notes on each quarter of the sum of $134.72 each. All the notes except one of each series have been paid. You were named as trustee in each deed of trust. Judge Rawlings sold these four notes to Ellis Powel, and Powel has turned them over to me to foreclose. I have prepared a waiver of your rights to act as trustee, which I shall be glad you will sign and return to me by return mail so I can have time to get my notices properly prepared in time for sale."

To this letter Slaughter replied under date of July 23d, to Stalcup, as follows:

"Dear Judge: I have your letter of July 20th with the waiver of rights as trustee, which I gladly sign and return to you.

"Hoping this will meet with your approval and wishing you success, I beg to remain, etc.
          "[Signed] W. B. Slaughter."

In the waiver mentioned, after reciting the facts of the execution of the deed of trust

191 S.W.—50

and the notes, and the fact that only one note on each quarter remains unpaid, and the notes had been transferred to Powel by Rawlings, and that Powel has requested that said trust be enforced, this clause follows:

"Whereas, I, the undersigned, W. B. Slaughter, having moved from said county of Dallam and not desiring to or being in a position to execute said trust, I hereby notify the said J. D. Rawlings, as well as the said assignee of the said notes, that I will not execute the said trust mentioned in said deed of trust, and hereby request that a substitute trustee be appointed."
Dated the 20th day of July, 1915.

Powel executed an instrument substituting R. E. Stalcup as substitute trustee. Stalcup thereupon gave notice for the sale of the land to take place September 7, 1915, reciting the facts with reference to the substitution; and on the 7th he did sell the same to D. E. Powel. There is no evidence in the record that Rawlings, Stalcup, or Powel, or any one else, ever requested W. B. Slaughter to sell the property as trustee under the deed of trust. All the request that was made was contained in the letter between Slaughter and Stalcup, and the waiver; however, in the notices it seems that Stalcup recited that Slaughter had refused to execute the trust after being requested.

The facts referable to the execution of the trust are uncontroverted and it was therefore a question of law for the court. The issue for determination is upon the facts, whether or not the substitute under the trust deed had the power to sell, and whether his deed to the purchaser conveyed any title; if not, the court properly instructed a verdict and rendered judgment, canceling the deed as a cloud upon the appellee's title. The letter from Stalcup to Slaughter shows that he prepared a waiver of the right of Slaughter to sell under the trust deed, and Slaughter's letter shows he signed such waiver as requested and returned it to Stalcup. By these letters and other evidence it is shown Stalcup expected to and did act as substitute trustee. This waiver, prepared by Stalcup, who was then attorney for Powell, and signed by Slaughter, recites:

"I hereby notify the said J. D. Rawlings, as well as the said assignee of said notes, that I will not execute said trusts mentioned in said deed of trust, and hereby request that a substitute trustee be appointed."

[1] This, evidently, was the language of Stalcup, who, as attorney, was acting for Powel, the assignee of the notes, in making this request. This was all the request ever made of Slaughter, either by Rawlings, Powel, or Stalcup. This cannot be construed, we think, into a request to Slaughter by Rawlings to sell the land. It was a request that he refuse to act under the deed. The trustee, in other words, was solicited to aid the assignee of the notes in thwarting the agreement of the original parties to the deed of trust, to the end that Powel's attorney may be appointed substitute trustee. The deed of trust made it the duty of Slaughter, "at

the request of the said J. D. Rawlings, at any time made after the maturity of said promissory notes, to sell." It will be noted the duty to sell is not imposed on Slaughter by the power at the request of the holder of the notes. The duty was imposed on Slaughter, or the power was vested in him, only at the request of Rawlings. "There is no provision for the sale to be made at the request of the holder of note, which is common in such instruments, and the fact that such provision is omitted goes far to strengthen the conclusion that the purpose was to confide the authority to put the power of sale into active operation to Upton alone. It may be that Reiger was willing to trust to Upton, believing that he would not direct the sale under improper circumstances; but, no matter what the reason may have been, Reiger had the right to impose the limitation, and the court has no power to disregard it." Boone v. Miller, 86 Tex. 74, 80, 23 S. W. 574, 576. So, in this case, the instrument confided in Rawlings alone the authority to put the power of sale into active operation. The facts show no request was ever made by Rawlings of Slaughter to sell.

[2] In this case the power of sale vested in the trustee remained dormant and inactive until called into action by the request of the beneficiary.

"Until that request was made, he had no power to act, and without that request there could not be a failure or refusal on his part to perform the power given him by the deed of trust. Speaking on this subject, in the case of Boone v. Miller, 86 Tex. 74, 23 S. W. 574, the Supreme Court said: 'The power of sale in a deed of trust is an important power, granted by the maker, and he has the right to place upon it such limitation and conditions as he may deem proper for his own protection. When the exercise of a power is made to depend upon the direction or request of a given person, then the direction or request of that person must be given in order to authorize the exercise of the power.' Under the testimony in the record, W. T. Armstead was never requested to sell the land, and for that reason did not execute the power placed in his hands by the deed of trust." Bemis v. Williams, 32 Tex. Civ. App. 393, 74 S. W. 332.

In that case Armstead was the trustee named in the deed. The sale was made by one Taylor as substitute trustee. The deed made by him as such was excluded by the trial court after hearing evidence that the original trustee had not been requested to sell the land. The powers enumerated in the deed were the same in that case as in this. The action of the trial court in that case was sustained, and the judgment affirmed.

The case of Bracken v. Bounds, 96 Tex. 200, 71 S. W. 547, is quite similar to this, and the powers in the deed of trust there, as far as set out, exactly the same as that used in the deed in the instant case. It is urged that the waiver signed by Slaughter evidences his purpose to refuse to execute the trust. In the Bracken Case, the Supreme Court said:

"The power of substitution gave him a remedy only in case the power of sale, created for his benefit, would be defeated by the action or non-action of the trustee chosen by Bracken. That he could not, for his own convenience, bring about the condition to authorize himself to select another trustee seems too plain a proposition to require argument or authority to support it. The mere assent by Allen to Bounds' suggestion that he should not act could not be held 'a failure or refusal' of Allen, in the sense of the deed of trust, without doing violence to its very substance."

[3] Under the deed of trust Slaughter was not authorized to sell until he had been requested thereto by Rawlings. His failure or refusal until so requested was not sufficient under the power to clothe the holder of the note with the power of substitution. The mortgagor had the right to demand that the named mortgagee first make the request of the trustee, upon whom they had agreed, before a sale could be made. The powers of that trustee were dormant and not effective until the proper request was made. When Powel's attorney requested a waiver, and that Slaughter notify Rawlings he would not execute the trust, Slaughter was then refusing something he could not then execute, and with which he was not then vested with the power to execute. Had he thereafter been called upon by Rawlings to sell, he could have done so, regardless of his waiver in favor of Stalcup. This waiver did not enlarge the powers of the holder of the notes, or lessen the rights of the mortgagor to have the property sold according to the terms of the deed. It cannot logically be said Slaughter failed and refused to execute a trust according to its terms when the request necessary to his power was never made. He could not fail or refuse to make a sale which, if then attempted, would not have been a sale. The power of substitution depended on his failure or refusal to make a sale. He simply, by his waiver, failed and refused to do an unlawful or a void thing. It is urged because of the declaration that he would not execute the trust that this was an unequivocal refusal, and that therefore the power of substitution existed. If the proper request had been made he may not have refused the duty. Powel and Stalcup adopted the method they did, which would most likely induce him to refuse; that is, the beneficiary solicited his resignation in favor of his attorney, and because of this solicitation procured a refusal. If he had requested Slaughter to sell, and indicated a willingness for him to do so, he likely would have more readily assented to the execution of the trust.

[4] A beneficiary should not be permitted to create such conditions as will accomplish his own end, regardless of the express agreement of the original parties to the instrument. The failure or refusal so obtained clearly, was never contemplated by the original parties. The failure or refusal contemplated was only such as would occur after

a proper request. This view, we believe, is supported by the Bracken Case, supra; also Bemis v. Williams, 32 Tex. Civ. App. 393, 74 S. W. 332; Davis v. Hughes, 38 Tex. Civ. App. 473, 85 S. W. 1161; Stallings v. Thomas, 55 Ark. 326, 18 S. W. 184.

We think the action and ruling of the trial court in this case correct under the facts. The judgment is affirmed.