HAZLETON et al. v. HOLT.　(No. 2687.)

(Court of Civil Appeals of Texas. Amarillo. June 2, 1926. Rehearing Denied June 30, 1926.)

1. Mortgages ⬅➡349, 351—Pledges ⬅➡56(2).

Party granting power of sale in deed of trust, mortgage, or pledge agreement has right to designate time and manner of its exercise.

2. Mortgages ⬅➡340, 341—Pledges ⬅➡56(2).

Power of sale in deed of trust, mortgage, or pledge agreement, unless authorized by instrument, cannot be delegated to another.

3. Pledges ⬅➡56(4, 7).

Sale of pledged collateral at private sale without notice to pledgor or public passed no title and constituted conversion by purchaser.

4. Bills and notes ⬅➡439—Guaranty ⬅➡100.

Where guarantor of note paid note, it became functus officio, and, though guarantor was entitled to securities pledged, his remedy against maker was suit in assumpsit.

5. Principal and surety ⬅➡190(1)—Subrogation ⬅➡30.

Surety on paying obligation cannot maintain suit on original contract, but is entitled only to reimbursement for such payment.

6. Appeal and error ⬅➡1062(2).

If trial court renders judgment which should have been rendered without submission of issues to jury, case will not be reversed, because it was not based on answers to issues.

7. Pledges ⬅➡31(4)—Subsequent sale of converted pledged property made buyer and seller joint tort-feasors.

Where pledged security was sold without notice to pledgor, there was completed conversion, and subsequent sale constituted seller and buyer joint tort-feasors liable for value of pledged property.

8. Trover and conversion ⬅➡44.

Ordinarily, measure of damages for conversion of personal property is market value at time and place of conversion, with interest.

9. Pledges ⬅➡36—Measure of damages for conversion of notes of bankrupt was value of pledged property, not to exceed face of notes.

Where conversion was of notes made by bankrupt, measure of damages for conversion is determined as of value of property pledged to secure notes, not to exceed face of notes.

10. Pledges ⬅➡36.

Where notes, alleged to have been converted, were made by bankrupt, secured by cattle in another county, court properly instructed jury to ascertain value of cattle in such county as measure of damages.

11. Trial ⬅➡366.

Objection to submission of issue in court's charge was waived by subsequent submission of instruction given by court and practically adopting such issue.

12. Pledges ⬅➡31(4).

That person having sold pledged property without notice to pledgor did not profit by conversion does not release him from liability therefor.

On Motion for Rehearing.

13. Pledges ⬅➡56(4).

Owner of note secured collaterally can sell at public or private sale, but must give notice to pledgor.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Suit by Sam J. Holt against D. O. Hazelton and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Tatum & Strong, of Dalhart, for appellants. R. E. Stalcup, of Dalhart, for appellee.

RANDOLPH, J. This suit was filed by Sam J. Holt, as plaintiff, in the district court of Dallam county, Tex., against D. O. Hazleton, W. E. Gammage, and the First National Bank of Dalhart, Tex. Prior to, or pending, the trial, the plaintiff dismissed his suit against the bank, and the cause proceeded to trial between the other named defendants and plaintiff. The case was tried before a jury and submitted to them on special issues, and, on the return of their answers to same into court, both parties filed motions for judgment. The court virtually sustained the plaintiff's motion by rendering judgment in

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

his favor, and appeal has been taken from such judgment.

We make the following brief summary of the evidence: Plaintiff brought this suit to recover damages for the conversion by defendants of certain notes, which the evidence discloses were executed by one R. L. Simmons and wife. There were three of these notes, the first dated October 1, 1924, and the other two dated September 1, 1924, for $1,484.26, $1,200, and $1,600 respectively payable to the order of D. O. Hazelton and secured by mortgage on certain cattle. About January 1, 1925, Hazelton sold these notes to the plaintiff, together with the mortgage on the cattle. On January 9, 1925, the plaintiff borrowed $1,500 from the First National Bank and executed and delivered to the bank his note for $1,575, to cover the principal and interest on said note; which note matured on July 8, 1925. Plaintiff also, for the purpose of securing the payment of said note, pledged to the bank the three Simmons notes and the mortgage securing them. On July 8, 1925, the bank's note not being paid, the bank called on Hazleton to pay it. Hazleton had guaranteed the payment of the note and, upon the demand by the bank, paid it to the bank, and the bank indorsed it to him without recourse, and also delivered to him the three Simmons notes and mortgage.

There is a question presented to us by appellee, the solution of which dispenses with the necessity for the consideration of the greater part of appellants' propositions and assignments; hence we shall proceed to consider that question.

The note given by the plaintiff to the bank for $1,575 contains this provision:

"This note is secured by pledge of the securities mentioned on the reverse hereof, with the right to call for additional security should the same decline, and, on failure to respond, this obligation shall be due and payable on demand, with full power and authority to sell and assign and deliver the whole of said property, or any addition thereto, at public or private sale, at the option of the First National Bank, on the nonperformance of this promise and without further notice, applying the net proceeds, first, to the payment of this note, and the balance at the option of the First National Bank, to any other liability to said First National Bank now existing, or which may hereafter accrue, and accounting to me for the surplus, if any, and I hereby agree to pay attorney's fees of 10 per cent. in case of suit. It is further agreed that the pledgee shall have the right to buy in said securities at market rate at said private or public sale."

Appellee makes this contention that, while the note provides, as above quoted, for the bank to sell the pledge at private or public sale and without notice, upon default in the loan, it does not confer on the assignee of the loan note the same right, and that the sale of the pledged property by Pigmon to Hazleton, and by Hazleton to Gammage, was without authority and void; that the assignee's remedy was at public sale.

The evidence discloses that, when Hazleton paid off the bank's note and had it indorsed to him, he at once sold the note to Pigmon, his son-in-law, and delivered it and the collateral pledge to him; that Pigmon, claiming to act under the power of sale contained in the note, then sold Hazleton the collateral at private sale, without notice to Holt or the public, and marked the bank's note paid.

[1, 2] The rule governing the exercising of such a power of sale is the same whether contained in a deed of trust, mortgage, or pledge agreement. A party granting the power of sale has the right to designate the time and manner of its exercise and by whom it may be exercised. The power of sale, unless authorized by the instrument, cannot be delegated to another. Flower v. Elwood, 66 Ill. 438.

In the case of Rawlings v. Lewis, 191 S. W. 784, this court, speaking by Judge Huff, lays down the rule that, in the absence of a specific request to sell made to the trustee and of his refusal to act, there was no authority to appoint a substitute trustee; the instrument not containing such provision.

In the case of Boone & Scarborough v. Miller, 86 Tex. 74, 80, 23 S. W. 574, 575, the Supreme Court of Texas says:

"The power of sale in a deed of trust is an important power, granted by the maker, and he has the right to place upon it such limitations and conditions as he may deem proper for his own protection. When the exercise of a power is made to depend upon the direction or request of a given person, then the direction or request of that person must be given in order to authorize the exercise of the power. 18 Am. & Eng. Encycl. of Law, 'Powers,' p. 977, § 13; Richardson v. Crooker, 7 Gray [Mass.] 190; Haymond v. Jones, 33 Grat. [Va.] 317."

The court says further, in the Miller Case, that:

"There is no provision for the sale to be made at the request of the holder of the note, which is common in such instruments, and the fact that such provision is omitted goes far to strengthen the conclusion that the purpose was to confide the authority to put the power of sale into active operation in Upton alone. It may be that Reiger was willing to trust Upton, believing that he would not direct the sale under improper circumstances; but, no matter what the reason may have been, Reiger had the right to impose the limitation, and the court has no power to disregard it."

See, also, Bracken v. Bounds, 96 Tex. 200, 204, 71 S. W. 547; Dolbear v. Norduft, 84 Mo. 619.

[3] The sale of the pledged collateral having been made at private sale, without notice notice to the pledgor or to the public, Hazleton acquired no legal title to same; hence he was guilty of a conversion of such pledge.

Under this holding the question of the inadequacy of the consideration becomes immaterial, and for that reason we will not discuss it.

[4] There is another ground upon which the judgment of the trial court should be sustained. Hazleton was a guarantor of the payment of the note given to the bank by Holt. When called on to make his guaranty good, he paid off the note. This is true notwithstanding the bank indorsed the note to him without recourse. When he paid the note, it became functus officio. Hazleton's remedy against Holt was a suit in assumpsit upon Holt's implied promise to reimburse him for the money so paid by him, or to sell such pledge at public sale after notice. It is true that the guarantor, when he paid the note, became entitled to the possession of the securities held by the bank; but that only carried with it the equitable lien and did not entitle him to the benefit of the contract contained in the discharged note.

[5] The ground upon which a surety is entitled to contribution is that he has paid the debt; he cannot maintain his suit on the original contract. Holliman v. Rogers, 6 Tex. 91; Jackson v. Murray, 77 Tex. 644, 14 S. W. 235.

Judge Brown, in the case of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 28 L. R. A. 528, reviews the various Texas decisions upon the question whether or not a surety, in paying the note, is entitled to bring his suit upon the contract as evidenced by the note, or, by way of assumpsit, upon the implied promise for reimbursement, and says:

"From a careful examination of the authorities, we reach the conclusion that, when the creditor has no security from either of the payors, and the debt itself holds no lien upon property, nor is for any reason entitled to priority over other debts of the debtor, the payment of the debt by a co-obligor or surety satisfies the original debt, and the party paying has his right of action against the others upon the implied promise raised by law for reimbursement, according to their several liabilities. * * *

"When the creditor in such a contract has a security from the principal or obligor, or either of them, or if the debt itself constitutes a lien upon the property of the debtor, as a vendor's lien, or if from its nature it be entitled to priority in payment of other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the creditor to the extent that he makes payment on the debt; and if it be necessary, from the character of the lien, or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end."

See, also, Dwight, Skinner & Co. v. Matthews & Co., 94 Tex. 533, 536, 62 S. W. 1052; Darrow v. Summerhill, 93 Tex. 92, 105, 53 S. W. 680, 77 Am. St. Rep. 833.

[6] The issues submitted to the jury do not conclude the trial court from rendering judgment upon the law of the case; such issues not bearing upon the question upon which the judgment is or may be rendered. If, as a matter of law, the trial court renders a judgment which should have been rendered without the submission of the issues to the jury, the case will not be reversed, because it is not based on the answers to the issues so submitted, for such answers have become immaterial. Eisenstadt Mfg. Co. v. Copeland et al. (Tex. Civ. App.) 149 S. W. 713, 716.

[7] In law there can be no double conversion. When Pigmon sold the pledge security to Hazleton and canceled the bank note, there was a completed conversion. The further conduct of Hazleton in the sale of the pledge to Gammage constituted them joint tort-feasors. When they disposed of the cattle, Hazleton, in selling, and Gammage, in buying them, became liable for their value.

[8, 9] It is true, ordinarily, that the rule for the measure of damages for the conversion of personal property is the market value of same at the time and place of the conversion with legal interest thereon from the date of the conversion (Smith v. Bates [Tex. Civ. App.] 27 S. W. 1044, 1045; Waldrop v. Goltzman [Tex. Civ. App.] 202 S. W. 335; Blum v. Merchant, 58 Tex. 400; Wallace v. Finberg, 46 Tex. 35; Tucker v. Hamlin, 60 Tex. 171); but in the case the facts present a case out of the ordinary. It is conceded that Simmons, the maker of the collateral notes and the mortgage securing it, was a bankrupt, consequently the notes had and could have no value at the time they were converted, except such value as was given them by the mortgage of the cattle, which cattle were then located in Hall county, Tex. If the notes had been due from a solvent man, the measure of damages for their conversion by the pledgee, or his assigns, would be, prima facie, for the amount of the notes; but where, as in this case, it is shown that the maker of the notes is insolvent the pledgor is entitled to recover the value of the notes as determined by the value of the property pledged, not to exceed the face of the notes. 31 C. J. 845, 846; Barber v. Hathaway, 47 App. Div. 165, 62 N. Y. S. 329; Griggs v. Day. 136 N. Y. 152, 32 N. E. 612, 613, 18 L. R. A. 120, 32 Am. St. Rep. 704.

[10, 11] The mortgaged security (the cattle) being in Hall county, and the note otherwise having no value, the trial court did not err in instructing the jury to ascertain the value in Hall county. However, appellants' objection to the submission of the fourth issue in the court's charge was waived by their submission of an instruction, which the trial court gave, practically adopting such issue. The fourth special issue as given in the court's main charge is as follows:

"What was the reasonable market value of the security of the collateral notes on the 13th day of July, 1925, in Hall county, Tex.?"

The appellants, in their written objections to the court's charge, objected to this issue being submitted to the jury, and then tendered the court the following special instruction:

"You are instructed in connection with special issue No. 4, as contained in the court's charge, that the reasonable market value as used in said special issue means such sum of money as the property in question, in the condition you find it was in, was worth in Hall county, Tex., on July 13, 1925, if offered for sale in said market at said time and place."

This specially requested instruction was given by the court and was answered by the jury, "Yes."

"Every person is liable in trover who personally, or by agents, commits an act of conversion, or who participates by instigating, aiding, or assisting, or who benefits by its proceeds in whole or in part therefrom." 38 Cyc. 2054, 2055.

[12] The fact that he disposed of the property for a sum less than its value, and to that extent did not profit by the conversion, cannot aid Hazleton in escaping paying its value.

Finding no reversible errors, for the reasons stated, we overrule all of appellants' assignments and propositions, and affirm the judgment of the trial court.

### On Motion for Rehearing.

[13] We might have been inaccurate in stating the rule as to the right of the purchaser of a note, secured collaterally, to sell the security. We understand that such owner of the note has the right to sell at public or private sale, but always with notice to the pledgor.

Motion for rehearing overruled.