824

## JOHNSON v. SNAMAN.
### No. 8000.

Court of Civil Appeals of Texas. Austin.

Oct. 3, 1934.

Appellant's Motion for Rehearing Overruled
Nov. 7, 1934.

Appellee's Motion for Rehearing Granted in
Part and in Part Overruled Nov. 7, 1934.

Appellant's Motion for Leave to File Second
Motion for Rehearing Overruled

Nov. 28, 1934.

Cofer & Cofer, of Austin, for appellant.

White, Taylor & Gardner, of Austin, for appellee.

BAUGH, Justice.

A. S. Johnson, Jr., son and sole heir of Kate S. Johnson, deceased, sued Max Snaman to cancel liens on certain property in the city of Austin, created by two deeds of trust executed by Kate S. Johnson during her lifetime, joined by Wm. H. Folts as substitute trustee, to secure two notes executed by her, payable to Max Snaman, aggregating the principal sum of $14,348. The defendant by crossaction sought to have his debt and lien established and foreclosed against A. S. Johnson, Jr., and against the estate of Kate S. Johnson; to have said property adjudged to belong to the estate of Kate S. Johnson; and to have a receiver appointed to take charge of said estate. Trial was to the court without a jury and judgment rendered against Johnson, decreeing said property to belong to the estate of Kate S. Johnson, establishing the validity of appellee's debt and lien as a claim against said estate, appointing A. S. Johnson, Jr., as receiver, and directing that said judgment be certified to the probate court for observance. From this judgment, Johnson has appealed.

Appellant's suit is predicated upon his construction of an instrument executed by Kate S. Johnson and husband, A. S. Johnson, Sr., dated February 6, 1908. This instrument, in the form of a deed, conveyed to A. S. John-

son, Jr., certain described properties in the cities of Austin and El Paso, including the property here involved, subject to the following provisions:

"In trust, nevertheless,

"First: To enter into and upon, take and retain possession of said premises and manage, control and rent the same, and to collect and receive said rents, and to apply said rents to the purposes hereinafter mentioned; but no portion of said premises shall be rented for a longer period than two years without the written consent of Mrs. Kate S. Johnson.

"Second: To mortgage or otherwise encumber the said premises in whole or in part, as he may be permitted by said Mrs. Kate S. Johnson; her said direction shall be shown by her joining in said mortgage or other encumbrance and not otherwise.

"Third: To sell and convey the said premises in whole or in part as he may be directed by the said Mrs. Kate S. Johnson; her direction to be shown in the manner herein provided for in case of mortgages and encumbrances; and such sale or conveyance shall convey the premises therein described free from and discharged of this trust, unless in said conveyance it is otherwise specially provided.

"Fourth: To convey the said premises on the death of Mrs. Kate S. Johnson, or so much of them as may then remain subject to this trust, to such person or persons, and for such purposes as the said Mrs. Kate S. Johnson may by last will direct and appoint. In default of said direction and appointment, then the beneficial as well as legal title to said property shall pass to and vest in the said A. S. Johnson, Jr., and he shall then become seized and possessed thereof for his own use and benefit.

"Fifth: The rents and profits of said premises he shall appropriate: (1) to the expenses of the execution of this trust; (2) the surplus shall be paid to Mrs. Kate S. Johnson and not to her husband or any future husband, and her receipt for said surplus shall alone discharge such trust deed. As a part of the expenses of said execution of this trust shall be included the taxes, assessments, insurance and repairs paid or made by said trustee, and also the cost of all improvements that said trustee may deem it advisable to make or erect on said premises.

"Sixth: In the event of the death, refusal or failure of said A. S. Johnson, Jr., to act,

the said Mrs. Kate S. Johnson may in writing appoint a substitute trustee.

"To have and to hold, all and singular, the premises aforesaid, unto him, the said A. S. Johnson, Jr., his heirs and assigns, forever, for the purposes and upon the trust aforesaid; and we do hereby bind ourselves, our heirs, executors or administrators, to warrant and forever defend the premises aforesaid unto the said A. S. Johnson, Jr., his heirs and assigns, against every person whomsoever, lawfully claiming or to claim the same or any part thereof, the premises herein described.

"Witness our hands this 6th day of February, A. D. 1908.

"[Signed] A. S. Johnson
"Kate S. Johnson."

The first contention made by appellant, embodied in his first five propositions, is that the above instrument vested in A. S. Johnson, Jr., not only the legal title to said property, but the beneficial title as well, to take effect upon the death of Mrs. Johnson, in the event she did not otherwise dispose of said property by will, as provided in paragraph "fourth"; that she reserved only a life estate in herself to said property, with power of appointment in said instrument reserved, which power she did not exercise; and that, therefore, upon her death title to said property vested absolutely in appellant; it was not a part of her estate, and passed to appellant free of all debts of Mrs. Johnson.

While the reasons for the execution of said instrument do not appear in the instrument itself, in the light of surrounding and subsequent conditions, we think it is obvious that it was executed in contemplation of permanent separation of Mrs. Johnson and her husband, A. S. Johnson, Sr., and primarily for the purpose of taking the control and management of said property, with its income, rents, and revenues, out of the hands of A. S. Johnson, Sr., which under the laws then existing he was entitled to have. Permanent separation did take place in 1908, and thereafter A. S. Johnson, Sr., lived in El Paso, and Kate S. Johnson in Austin. On December 9, 1924, Mrs. Johnson secured a divorce from him on the grounds of ten years' abandonment.

The deed of trust liens sought to be canceled by appellant and the obligations which they were given to secure arose under the following circumstances:

The first deed of trust was executed by Kate S. Johnson, reciting that she was a widow, joined by A. S. Johnson, Jr., as trustee, to secure a note for $3,100, dated May 23, 1918, due two years after date, payable to J. A. Stroberg. This note and lien was subsequently on May 27, 1920, transferred to James E. Lucy, acting for the American Surety Company.

The second deed of trust was executed on March 17, 1920, by A. S. Johnson, Sr., and Kate S. Johnson, joined by Wm. H. Folts as substitute trustee, appointed on that date by Kate S. Johnson and A. S. Johnson, Sr., by a duly executed instrument, reciting that A. S. Johnson, Jr., had failed to act under the instrument of February 6, 1908; and was given on said property to James E. Lucy, for the use and benefit of the American Surety Company, to secure a note for $9,000. This debt arose as follows: A. S. Johnson, Jr., was in December, 1919, an employee of the South Texas Commercial National Bank of Houston, Tex. His employment ceased on December 20, 1919. An examination of his records showed a shortage in his account of approximately $9,000, which the American Surety Company, as fidelity surety for the employees of said bank, made good. The note and deed of trust were executed by his father and mother for money to reimburse the surety company for said shortage paid by it.

These two notes and liens were transferred by James E. Lucy, on December 23, 1924, to the Guaranty Mortgage Company, and by it assigned to Max Snaman appellee herein. On March 17, 1925, subsequent to the time she secured her divorce from A. S. Johnson, Sr., Mrs. Kate S. Johnson, joined by Wm. H. Folts, substitute trustee, executed with appellee a renewal and extension of said notes and liens, merged into a renewal note for the principal sum of $12,348, due five years after date.

The third deed of trust on said property was executed by Kate S. Johnson, joined by Wm. H. Folts, trustee, on April 23, 1928, to secure a note for $2,000, due two years after date, payable to appellee. This was for money borrowed by Mrs. Johnson from Snaman to secure the release of A. S. Johnson, Jr., from jail in Missouri, and to make good certain school warrants charged to have been forged by him. Both the $12,348 and the $2,000 notes were on March 16, 1930, renewed and extended by written agreement between Mrs. Johnson, joined by Folts as substitute trustee, and appellee to March 16, 1935, and April 23, 1935, respectively. And it is upon these notes and the liens securing their payment that appellee sought and was awarded judgment by the trial court.

■ Regardless of the exact character of estate vested in A. S. Johnson, Jr., by the instrument of February 6, 1908, it is obvious that Mrs. Johnson was both grantor and the principal beneficiary. While an effort is made to distinguish between the power to mortgage and the power to sell provided for in paragraphs "second" and "third" of said instrument, it is obvious, we think, that they are clear reservations in Mrs. Johnson, at her option and for whatever purposes she saw fit to do either, through the named trustee, or in the event of his death, failure, or refusal to act, to appoint a substitute trustee to carry out her purposes in the matter. And whether the estate conveyed to A. S. Johnson, Jr., by said instrument be deemed a conditional limitation over or a contingent remainder, the power to terminate it or to defeat it was expressly reserved in the instrument creating it. If Mrs. Johnson complied with its provisions, and validly exercised the powers reserved, even though she did not exercise the further power of appointment by will reserved in paragraph "fourth", whatever estate passed to A. S. Johnson, Jr., at her death, passed subject to the burdens placed upon it by Mrs. Johnson during her lifetime, in accordance with the powers expressly reserved so to do in the grant creating that estate.

Nor is this conclusion at variance with the holding of the Supreme Court in Lockridge v. McCommon, 90 Tex. 234, 38 S. W. 33, relied upon by appellant to support his contention. It is in keeping with that case. In that case Andrew Lockridge and wife conveyed the fee-simple title in their property to their two sons, Robert B. and John T. Lockridge, reserving only a life estate in themselves. The limitation over was imposed upon the estate of Robert B. Lockridge, in case he did not dispose of his interest by deed or will, neither of which Robert B. Lockridge undertook to do. No power was reserved in the grantors in that case to impair or defeat the estate conveyed. In the instant case this power was expressly reserved to the grantor in the trust deed, and was, we think, validly exercised.

■ We do not agree with appellee's contention that when Mrs. Johnson secured a divorce from her husband in 1924, the only reason for the trust ceased to exist and the trust therefore terminated. The instrument itself related not only to the then husband of Mrs. Johnson, but applied as against any future husband; and paragraph "fourth" imposes upon the trustee, subject to the conditions named, the duties there prescribed even after the death of Mrs. Johnson. In addition, Mrs.

Johnson herself recognized the trust as active and continuing in the deed of trust executed by her and the substitute trustee in 1928, and in the renewal agreement of said notes in 1930, long after the divorce was obtained. Under these circumstances, it cannot be said that the trust, subsequent to the divorce decree of December, 1924, was no longer an active trust, nor that all of its purposes had been accomplished when the divorce was granted.

■■ The second contention made by appellant, that there being no evidence that Mrs. Johnson ever requested A. S. Johnson, Jr., to act, and he never having refused to act, the appointment of a substitute trustee was unauthorized and void, and that the deeds of trust executed through the substitute trustee were void and should be canceled.

We do not sustain this contention. Appellant cites and relies upon cases where a deed of trust given to secure indebtedness to a third party as beneficiary was involved, and the substitute trustee was appointed by the creditor, particularly Boone v. Miller, 86 Tex. 74, 23 S. W. 574; Chestnut v. Gann, 76 Tex. 150, 13 S. W. 274; Bracken v. Bounds, 96 Tex. 200, 71 S. W. 547; and Cheveral v. McCormick, 58 Tex. 440, and subsequent cases applying the rules therein announced. It is the settled rule of law in such cases that in order to sustain a conveyance by a trustee, and to deprive one of his property through such method, the terms of the deed of trust must be strictly complied with. The reasons for such a rule are obvious and cogent. But where the grantor himself, whose interests are the ones protected by such rule and for whose benefit such rule was enunciated, as in the instant case, is also the beneficiary, and no creditor's interest is involved, the trustee is merely the agency through whom the conveyance or mortgage is made; and where, as here, the grantor himself appoints a substitute trustee and then joins him in the conveyance, the reason for such rule wholly fails and that rule does not apply. The grantor in such case would clearly be estopped to set up as invalid that which he had voluntarily brought about, after he had received the benefit thereof, and innocent third parties had advanced him money thereon in good faith. If the grantor could not attack such substitute appointment, clearly those claiming under him would have no right to do so. The rule relied upon by appellant, therefore, does not apply to the facts of the instant case.

No creditors were involved in the trust deed here under consideration. The trust im-

posed was an active one, the principal duties of the trustee being to manage, control, look after, and collect the rents and revenues from the property in question. In any conveyance or mortgage of the property he was to act under the direction of Mrs. Johnson, and of no one else. In case he failed or refused to act, she expressly reserved the power to appoint another trustee. If it be granted, as contended by appellant, that he never refused to act because he was never requested by his mother to do so, we think there is no question but that under the undisputed facts he failed to act within the terms of said instrument, and wholly abandoned and repudiated the active trust in 1919. During that year he gave written instructions to his mother to collect the rents on the Austin property. When the appointment of Folts as substitute trustee was made in March, 1920, he was in California and never again returned to Austin until 1928. During that interval he performed none of the duties of the trust imposed upon him by the original instrument. While he testified that he was in telegraphic communication with his mother about the time of the appointment of the substitute trustee, and that he thereafter lived in El Paso until September, 1920, at which time he left the state and his whereabouts were thereafter unknown to his mother until he was placed in jail in Missouri, in the spring of 1928, on a charge of forgery. His mother then again acted in his behalf and borrowed $2,000 more on the security of the property in question, and paid it out for his benefit. Whether his whereabouts were known to his mother, whose trustee he was, when the appointment of a substitute trustee was made and whether he was by her requested to act at that time or not, we think his conduct in turning the property back to her in 1919 to look after herself, absenting himself from the state, and concealing his whereabouts from her for a period of eight years during a part of which time he was under indictment by a federal grand jury for the Houston bank shortage, conclusively shows an abandonment of the active duties of his trusteeship, a failure to discharge the duties imposed upon him by the terms of said instrument, and authorized her appointment of Folts as substitute trustee. Consequently his appointment was valid and the mortgages here attacked executed thereunder were valid and binding.

█ We have concluded, however, that the appointment of the substitute trustee did not defeat the limitation over to A. S. Johnson, Jr., provided for in paragraph "fourth." Under this provision whatever property remained subject to the trust at her death passed, not to A. S. Johnson, Jr., as trustee, but to him individually. Had Mrs. Johnson, through the trustee, conveyed it to some one else, or had she devised it by will to some one else, as in said trust instrument she reserved the right and power to do of course, nothing would have remained to vest in appellant. Neither of these conditions occurred, however, and the beneficial title to said property passed upon her death to A. S. Johnson, Jr., under said instrument, as his property, subject to and encumbered with the deed of trust liens theretofore placed thereon by Mrs. Johnson under the power reserved by her so to do in the trust deed in question.

The trial court erred, therefore, we think in adjudging said property belonging to the estate of Mrs. Johnson, and in failing to foreclose said liens on said property against appellant.

█ Appellant also attacks as void the $3,-100 note to Stroberg and the lien securing its payment, on the ground that Mrs. Johnson was then a married woman, was not joined therein by her husband; that it was not shown to have been executed for necessaries, etc.; and that when renewed and extended by being merged into the note for $12,348 in 1925, it was barred by limitation. None of these contentions is sustained. The defense of coverture was personal to Mrs. Johnson and cannot be asserted by appellant. Unless forbidden by statute, a married woman's contracts are not void but voidable. 23 Tex. Jr., § 28, p. 40, § 200, p. 232, and cases therein cited. And limitation is but a defense which the party entitled thereto may urge or not as she chooses. Mrs. Johnson asserted neither. After her coverture was removed by divorce, she chose to affirm her former acts, recognized them as valid, renewed and extended the indebtedness, and executed the deeds of trust on her property as security therefor.

██ The next contention made by appellant is that the district court had no jurisdiction over appellee's cross-action on his notes, because it was made to appear that an administrator had been appointed of the estate of Mrs. Johnson, and there was neither allegation nor proof that appellee's claims had been presented to said administrator, nor that they had been rejected by him.

The validity of said debts and liens was the subject-matter upon which the jurisdiction of the district court was invoked by appellant himself. By cross-action appellee

sought to have their validity established. This the judgment of the trial court did and ordered said judgment certified to the probate court for observance. When the district court properly acquired jurisdiction over the parties and the subject-matter, it was authorized to grant full relief in the premises. It could not and did not undertake to interfere with the jurisdiction of the probate court in the administration of said estate.

In view of our conclusion, however, that said property did not belong to the estate of Mrs. Johnson, and of the undisputed facts disclosed by the record, we think this question becomes immaterial. It appears that Mrs. Johnson had no other property at the time of her death, and that the indebtedness against said property amounted to more than the value of said property. Under such circumstances we fail to see where an administration would serve any useful purpose.

Among other things, appellee pleaded estoppel against appellant to deny the validity of said notes and liens on the ground that he got the benefit of the moneys for which the notes were executed. It is not controverted that the proceeds of the $9,000 note were used to make good his shortage with the Houston bank; and those of the $2,000 note to make good the warrants which he was charged to have forged in Missouri, and to secure his release from jail there on such charge. The $3,100 Stroberg note and lien were signed by him as trustee, but there is no evidence as to what the consideration was for that note. While we are inclined to the view that appellee's plea of estoppel was good, having concluded that the deeds of trust attacked were valid, it becomes unnecessary to pass upon this issue.

▮▮▮ Appellant also complains of the admission of certain evidence relative to the Houston bank shortage, including a copy of the indictment against him in that case, which indictment was dismissed in 1928; and also with reference to the forgery charge in Missouri, which was also subsequently dismissed. We do not deem it necessary to consider these matters separately, nor in detail; but we think they were admissible on the issue of his absence from Texas, concealment of his whereabouts, and as reasons for his failure to act as trustee; and on the issue of estoppel to show that debts and liens attacked by him were created in his behalf and the proceeds thereof used for his benefit.

While all of the questions raised by appellant have not been discussed, the conclusions reached are determinative of the appeal. We have concluded that the judgment of the trial court in so far as it established appellee's debt and the validity and priority of his liens on the property involved should be affirmed. In so far as said judgment was ordered certified to the probate court, the judgment is reversed and the cause remanded to the district court with instructions that said liens be foreclosed upon said property against A. S. Johnson, Jr., and said property ordered sold as in law provided; that the proceeds of such sale be applied to the satisfaction of appellee's debt as established, and the remainder, if any, be paid over to A. S. Johnson, Jr.

Affirmed in part, and in part reversed and remanded with instructions.

### On Motion for Rehearing.

On motion for rehearing appellee asks that the order of the trial court appointing a receiver of the property involved be affirmed, and that he have judgment against appellant and the sureties on his supersedeas bond for the amount of the rents and revenues derived from said property and paid over to the receiver.

▮▮▮ While appellant prosecuted an appeal from the order appointing such receiver, no error has been urged in that respect in his brief, and no complaint here made as to such order. The order of the trial court appointing such receiver will therefore be affirmed. The appellant having justified his appeal, however, we are of the opinion that appellee is not entitled to a judgment on the supersedeas bond. Our former judgment herein is therefore modified to the extent that the order of the trial court appointing a receiver is affirmed, and to that extent appellee's motion for rehearing is granted. In all other respects said motion is overruled.

Granted in part and in part overruled.