# KELSAY v. FARMERS & TRADERS BANK et al., Appellants.

## Division Two, December 17, 1901.

1. **Deed of Trust: POWER TO SELL.** The power to sell under a deed of trust is a matter of contract between the parties, and is derived from the deed alone. They are authorized to select their own trustee, and another can not be substituted in his stead unless it is done in the manner and on the conditions mentioned in the instrument.

2. —————: —————: REFUSAL TO ACT. The beneficiary, desiring to realize enough from the sale of land to pay the debt secured by the deed of trust on plaintiff's homestead and also certain subsequent judgments, wrote to the trustee named in the instrument, who lived about fourteen miles from the county seat: "You will please proceed and advertise the land in next week's edition of one of our papers. If you fail to come, we will have the advertisement inserted." The trustee, being sick at the time, understood these words to mean that the beneficiary would cause the advertisement to be inserted in his name, but this was not done; the notice was given in the name of the sheriff, the substituted trustee, and on the day of sale the trustee came forward, and after the land was put up but before its sale, announced in the presence of the beneficiary and of the purchaser that the sale by the sheriff was illegal, that he had not refused to act. *Held*, that there was no refusal of the trustee to act, and the purchaser having had notice, the sale was invalid.

3. —————: INVALID SALE: NOTICE TO PURCHASER. The trustee appointed by the deed of trust remarked before the bids closed, at all events before the money was paid, in the presence and hearing of one of the two purchasers, that he had not refused to act, and the sale by the sheriff was illegal. The other purchaser had at one time owned the notes secured by the deed of trust, and knew he was named as trustee therein, and both were present at the sale. *Held*, that they were joint purchasers, and notice to one was notice to both; *and* that they had actual notice that the sale was being made by an unauthorized person and was therefore illegal. These facts were sufficient to have put men of ordinary prudence upon their inquiry.

4. —————: —————: INJUNCTION. Where the purchaser knew, or by the exercise of ordinary prudence would have known, that the nominated

trustee had not refused to act and that a sale by the sheriff as sub-
stituted trustee would be invalid, he can not complain when the
grantor brings suit to set the sale aside, that he did not take action
to enjoin the sale.

5. ———: ———: ———: TENDER: ARRANGEMENT FOR PAYMENT:
PREGNANT CIRCUMSTANCE. The lands described in the deed of trust
were the grantor's homestead, and the beneficiary was also the owner
of two subsequent judgments. The advertisement of sale was made
by the beneficiary in the name of the sheriff, and on the day of sale
the grantor arranged with a bank in a neighboring town to take up
the mortgage notes, and it telegraphed the beneficiary to stop the
sale and wire the amount of notes and costs and it would remit. The
beneficiary wired in reply the amount of the notes and also of the
judgments, and stated the sale would proceed unless all were paid.
*Held*, that the beneficiary refused the bank's money, not because it
was not a sufficient tender, but because it did not include the judg-
ments, which were not a lien on the homestead, and this action was
a "pregnant circumstance" going to show that the beneficiary's pur-
pose in making the sale was to defeat the grantor's homestead ex-
emption, and the grantor's action in thus arranging for payment is
sufficient explanation for his not bringing suit to enjoin the sale.

6. ———: ———: UNNECESSARY AMOUNT OF LAND: DISREGARD OF
MORTGAGOR'S RIGHTS. Where the sheriff became the agent of the bene-
ficiary, solely, in his endeavor to make the mortgaged homestead pay
not only the mortgaged debt, but also judgments which were not
liens on the homestead, and sold twice as much thereof as was neces-
sary to pay the mortgage debt, as was shown by the bids at the sale,
the sale will be set aside on these grounds alone, on timely appli-
cation.

Appeal from Moniteau Circuit Court.—*Hon. D. W. Shackle-
ford,* Judge.

AFFIRMED.

*Moore & Williams* with *W. M. Williams* for appellants.

(1)    The sheriff, under the terms of the deed of trust
given by plaintiff and wife, had full authority to act in adver-
tising and selling the land.    The failure of the trustee to act,
when requested, constituted a refusal to act.    The request was
peremptory; the beneficiary can not be defeated of its rights
by a subterfuge and a quibble.    Chase v. Williams, 74 Mo.
429.    James never intended to make the sale, as trustee, and

was plainly in collusion with Kelsay in the settled purpose of the latter to repudiate his agreements and contracts. He refused to sell while Powers held the notes, four different times, and then when the bank got the notes, he also refused to sell upon the peremptory order of the beneficiary. (2) (a) The bank had a right to secure all its indebtedness. Matthews v. Switzler, 46 Mo. 301; Chase v. Williams, 74 Mo. 429. (b) The only purpose of Kelsay in the entire transaction, in trying to prevent the sale under the deeds of trust, was clearly to induce the bank to sell and transfer the mortgage notes to third parties. He made no attempt to pay off the debts. "The bank had the right to decline to sell these notes; and the right as holder of the secured notes, to have the sale go on." Chase v. Williams, 74 Mo. 436. (3) (a) The two deeds of trust were separate contracts to secure two different notes. The beneficiary had the right to elect which should be first foreclosed, or whether one or both of the deeds of trust should be foreclosed. (b) When the sale was made under the junior deed of trust, after the payment of the note secured, the surplus funds belonged to the mortgagee, and as to the forty acres of land, which was also included in the first deed of trust, the sale was subject to the latter. Scheppelmann v. Feurth, 87 Mo. 351; Johnson v. Wilson, 77 Mo. 639. (c) The sales under the separate deeds of trust resulted in separate funds, in the hands of the sheriff, and the Millers got separate deeds. (d) The surplus funds in the trustee's hands were subject to execution against Kelsay, and to the payment of debts. After satisfying the executions, the surplus, together with the five acres of plaintiff's land not mortgaged, was in excess of his statutory exemption. Casebolt v. Donaldson, 67 Mo. 308. (4) (a) There is no evidence the land could have been sold in smaller subdivisions. Harkins v. Scammon, 48 Mo. App. 136. (b) The trustee had no right to release any of the security of the *cestui que trust.* Sherwood v. Saxton, 63 Mo. 82. (c) Kelsay and wife had executed the deeds of trust

to secure his indebtedness. Such mortgage of a homestead was valid under the statutes of 1879. Sec. 2689, R. S. 1889; Klopp v. Blessing, 121 Mo. 391. There is no law in this State that compels the beneficiary in a deed of trust to reserve or set apart any special part of the land for a homestead. The statutes in reference to the levy of executions have no application to mortgages or deeds of trust. Casebolt v. Donaldson, supra. (5) The plea of a tender in the bill of Kelsay asking to redeem, has no foundation in fact. No attempt was made to pay off the mortgage debt. "A tender is an offer to do or perform an act which the party offering is bound to perform to the party to whom the offer is made." Bouv. Law Dic., title, Tender. It must be an absolute offer to pay the debt without condition. 2 Green. Ev., secs. 602-605; Hudson v. Glencoe Gravel Co., 140 Mo. 114; Kitchen v. Clark, 1 Mo. App. 430. (6) (a) If at the time of the trustee's sale, there were no equitable grounds to set aside the sale by placing the parties in *statu quo,* it was unquestionably too late to redeem when the plaintiff brought this suit for that purpose, on the twenty-eighth day of February, 1898. It is a clear case of laches. (b) At the return term of the court the plaintiff, as execution debtor, although presumed to be in the court where the judgment was rendered, neither by person or attorney attempted to interfere with the action of the sheriff, or to prevent the disposition of a portion of the money derived from the trustee's sale of his lands, on the return of the sheriff of the funds into court, and the payment thereof on the executions against him to satisfy the judgment debts upon the order of record of the court. The return of the money into court as so much collected, and the facts as to the collection, was proper, and the plaintiff had his day in court. R. S. 1889, sec. 4915. The order of the court is *res adjudicata.* Ex parte Fearle & Lewis, 13 Mo. 467; State ex rel. v. Taylor, 56 Mo. 492. (c) Where a party is brought into court by personal service, and judgment is taken against him,

and execution issued to the sheriff of the same county in which the judgment was had, he is certainly fully notified of all the proceedings. The return of the sheriff on the execution became part of the record of the case. It is binding on the parties. Freeman on Executions (1 Ed.), secs. 363 and 364. Plaintiff, as an execution debtor, was presumed to be in court. State ex rel. v. Taylor, 56 Mo. 496; Harris v. Chouteau, 37 Mo. 168; Hopper v. Hopper, 42 Mo. 124; Lehman v. Stock, 94 Mo. 672; Buchanan v. Atchison, 39 Mo. 503. (7) The bank is not the real party in interest in this suit; it has received its money unconditionally. The judgment of the lower court, giving Kelsay the right to redeem by paying the mortgage debts to the bank is clearly erroneous. The defendants, Miller Brothers, paid their money at the trustee's sale; that money has paid plaintiff's debts. It is a clear case of subrogation. "In an irregular or void foreclosure of a mortgage, or an administrator's sale, the purchaser of the land is held in equity to be an assignee." City v. Priest, 103 Mo. 653; Wilcoxson v. Osborn, 77 Mo. 621; Long v. Long, 111 Mo. 12; Jones v. Mack, 53 Mo. 147; Honaker v. Shough, 55 Mo. 472; Wells v. Lincoln Co., 80 Mo. 431; Davis, Adm'r v. Gains, 104 U. S. 407; Valle v. Fleming, 29 Mo. 159.

*Edmund Burke* and *Jno. Cosgrove* for respondent.

(1) Chas. G. Inglish had no authority to act as trustee under the deeds of trust. Allen James was the person selected by the parties as the trustee to execute the provisions of the deeds of trust, in case a sale of the land became necessary. Mr. James was, at the time the land was advertised for sale and at the date of the sale, a resident of Moniteau county, able and ready to act. While these facts existed, the acting sheriff of Moniteau county had no authority whatsoever to act as trustee. (2) Inglish did not act impartially. He was anxious to collect the amounts due on the ex-

ecutions in his hands, and the only way he could do that was to sell the whole of the land in accordance with the advice of the attorney of all of the defendants. Inglish was the agent of both the mortgagor and mortgagee and should have performed his duties, even if there was no question about his right and authority to act, with strict impartiality. Good. v. Comfort, 39 Mo. 313; Carter v. Abshire, 48 Mo. 300; Sherwood v. Saxton, 63 Mo. 78; McClung v. Trust Co., 137 Mo. 115. (3) The offer to pay the amount due and all costs by the Bank of Morgan County was a sufficient tender in the circumstances of the case. The Farmers & Traders Bank declined to accept the amount due unless its two judgments were paid in addition to the amount. The formality of producing the money was waived by the action of the cashier by exacting the payment of other debts. Hurt v. Cook, 151 Mo. 430, and cases cited. (4) James, the trustee in the deeds of trust, did not refuse to act. The letter of Burck-hardt did not intimate that if he did not go to California the bank would construe such a failure a refusal to act, and would have the land advertised by the sheriff. The meaning of the language employed is that the advertisement would be inserted in the trustee's name. That is the way Mr. James understood it. He so stated in his testimony. If the defendant bank intended to have the sheriff make the sale, it should have said so. If it did so intend, its conduct was calculated to deceive, and it and those acting in concert with it and with notice of all the facts, should not be permitted to profit by such conduct. Cassady v. Wallace, 102 Mo. 575; Mann v. Best, 62 Mo. 491. (5) The sale of the land under the deed of trust last executed brought $1,000 (the amount due was $550 on the first note and on the second $245.45 in all $795.45) more than sufficient to pay the whole of the debts secured by the deeds of trust. The surplus arising from the sale first made under the junior deed of trust should have

been applied to the extinguishment of debt secured by the first deed of trust.

GANTT, J.—The petition alleges and the evidence shows the following facts:

On the seventh of December, 1886, the plaintiff and his wife executed and delivered their certain deed of trust conveying the northwest quarter of the southwest quarter of section 2, and northeast quarter of southeast quarter of section 3, all in township 43, range 16 in Moniteau county, to Allen James, as trustee, to secure the payment of a promissory note executed by plaintiff to Dr. J. M. Powers for $400 and bearing eight per cent interest from its date, December 6, 1886. On March 23, 1892, plaintiff and wife executed another deed of trust whereby they conveyed the south half of the west half of lot number 1, of the northwest quarter of section number 2 and the northwest quarter of the southwest quarter of section number 2, township 43, range sixteen, containing sixty acres more or less in Moniteau county, in this State, to secure a certain other note executed by plaintiff to said Dr. J. M. Powers dated March 17, 1892, for $300, and bearing interest from date at eight per cent per annum. In each of said deeds of trust it was stipulated and provided that if plaintiff made default in the payment of the note therein described when it became due, the said Allen James as trustee, at the request of the legal holder of said note, should proceed to sell the real estate in said deed of trust described, and in the event of the death of the said Allen James, his absence from the State of Missouri, or refusal to act, then the sheriff of Moniteau county should proceed to execute as provided in said deeds of trust. On the — day of September, 1897, the Farmers & Traders' Bank, of California, Missouri, had become holders of both of said notes, by purchase from Warren T. Miller, who had owned them since 1895. Dr. Powers indorsed the notes to Miller "without recourse." On March 13, 1895, the said

bank recovered a judgment in the Moniteau Circuit Court against plaintiff, Allen James and William Jobe for $221, and $6.85 costs, bearing eight per cent compound interest. On September 7, 1893, J. E. Bayne, administrator of S. D. Bayne, deceased, recovered judgment against plaintiff for $146.45.

On November 12, 1897, the Farmers & Traders' Bank wrote the following letter to Allen James, the trustee:

"Farmers & Traders' Bank
"California, Mo., Nov. 12, 1897.
"Mr. Allen James, High Point, Mo.

"Dear Sir:—The 'ten days extension granted in the matter of selling the land of J. R. Kelsay has expired. You will please proceed and advertise the land in next week's edition of one of our papers. If you fail to come we will have the advertisement inserted."

"Yours very truly,
"C. A. BURKHARDT, Cashier."

James, the trustee, was a witness in the case and testified he understood by this letter that the bank would advertise the sale in his name, but the bank caused the sheriff, C. G. Inglish, to advertise the sale, in his own name as alternative trustee, to be made on December 28, 1897. On that day the unpaid balance of principal and interest on the two notes and the costs of advertising amounted to $786, and the two judgments and interest amounted to $550.

On the day prior to the day set for the sale plaintiff induced his son to go to Versailles, Missouri, in the adjoining county, and make arrangements to stop the sale. Accordingly, on the morning of December 28, 1897, the cashier of the bank of Morgan County sent the following telegram:

"Versailles, Mo., Dec. 28, 1897.
"To Farmers & Traders' Bank,
        "California, Mo.
"Stop sale of J. R. Kelsay's Land.   Wire us amount of mortgage and costs and we will remit.
                        "W. W. MOORE, Cashier."

To which the Farmers' & Traders Bank replied:

        "California, Mo., Dec. 28, 1897.
"To Bank of Morgan County,
        "Versailles, Mo.
"J. R. Kelsay mortgage and costs seven hundred and eighty-six dollars.   Other judgments on land about five hundred and fifty dollars.   Will you pay all?   If not sale will proceed.   Answer.
                "C. H. BURKHARDT, Cashier."

As no arrangement had been made to pay the judgments, the Morgan County Bank declined to pay them, and on the afternoon of December 28, 1897, the sheriff, Inglish, proceeded to offer the land for sale in separate parcels.   While he was crying the sale, the trustee, Allen James, appeared on the scene and said the sale was illegal; that he had never refused to make the sale.   His statement was heard by the senior Mr. Burkhardt, the president of the bank, and by Miller, who became one of the purchasers, before he paid his money or the land was knocked down to him, and by others standing in the crowd.   The land was sold under each deed of trust.   The first sale brought about $1,000, or about $300 more than the two notes and interest amounted to on that date.

When asked by counsel why he sold under both deeds of trust after the first sale had realized several hundred dollars more than enough to satisfy the mortgage debts, the sheriff

answered he did it because directed to do so by Mr. Williams, who was the bank's attorney, and who, it appears, was a director in the bank. The sheriff made a deed to Charles P. and Warren T. Miller. This one hundred acres of land constituted the homestead of J. R. Kelsay, the plaintiff herein. His dwelling house was situated on the northwest quarter of the southwest quarter of section 2, township 43, range sixteen, and was occupied by himself and family as their homestead at the time, and for a number of years prior to the sale.

This is a suit in equity by plaintiff praying to have said sale set aside because said Inglish had no authority to sell the same, and because the homestead was sacrificed by the way in which the sale was conducted, and because in this way plaintiff was deprived of his homestead by subjecting it to judgments from which it was exempt, and he prays to be allowed to redeem, and for other and further relief.

This suit was commenced on February 21, 1898, after the sale on December 28, 1897. Other facts will be noted in the opinion.

The defendants filed separate answers. The bank admits its incorporation; that plaintiff was the owner of the land, and that he and his wife executed the notes and deeds of trust described in the petition, and that it had become the owners of the two notes, but denies the land was worth $2,500 as alleged by plaintiff. Admits the recovery of its judgment of March 12, 1895, and that an execution was placed in the hands of the sheriff, Inglish, and was held by him when he made the sale. Admits it requested Inglish to make the sale under the deeds of trust, and that he did make the sale on December 28, 1897, and that the lands of plaintiff were purchased by Charles P. and Warren T. Miller. Admits that Allen James, the trustee, named in the deeds of trust, was, at the time of the advertising of the sale and at the time it was made, a resident of Moniteau county, but denies that he was willing to execute the trust reposed in him and to sell said

lands when so requested by the holder of said notes, but on the contrary, this defendant as the holder of said notes, did request said Allen James to advertise and sell said lands prior to the request made to said Inglish, but the said Allen James who was then and is now the neighbor, and friend and companion of plaintiff, refused and neglected to advertise and sell said lands, and thereupon it called upon the said sheriff, Inglish, to make said sale, which he did, after advertising the same, and that neither plaintiff nor said James, made any objection to the sale, although James was present at said sale. Denies that plaintiff on the morning of the sale tendered defendant the amount of his notes and interest and costs as alleged by him.

The defendants, Miller, in their separate answer, deny the sale was illegally made by the sheriff; allege that James refused to make the sale and was present when the sale was made, and made no objection thereto. Allege that they bought in good faith and paid $1,550; the reasonable value of said lands, and that plaintiff permitted Inglish, the sheriff, to pay over to the execution plaintiffs, the bank and Bayne, the amounts of said execution without objection and thus received a credit out of said payment, and is now estopped from claiming said payments were illegal or wrongful.

The sheriff, Inglish, in his separate answer, admits he made the sale at the request of the bank, and that he paid over to the bank the amount of its notes and interest, and that he returned the balance into court and was directed to pay the amount of the executions he held to the plaintiffs therein, and still holds a balance of $257.92 for plaintiff, which he is ready to pay over to him. That he acted in good faith; that plaintiff and James lived in the county and James was present at the sale and made no objection thereto, nor did plaintiff make any objection though advised of all the facts. The sheriff made like answer and set up substantially the same facts alleged in the answers of the other defendants.

The plaintiff in his reply denied all the new matter alleged in the answers and again prayed judgment.

I.   As already indicated, the powers of sale in the two deeds of trust were not executed by Allen James, the trustee named and appointed therein, but by the sheriff of Moniteau county.   The plaintiff is the grantor in the deeds of trust, and insists that his deeds determine the extent as well as the manner of executing the trust, and that the substitution of the sheriff to make the sale was without authority conferred by the deeds of trust, and was so irregular, as to entitle him to redeem therefrom.

The right of the bank, which held plaintiff's notes secured by the deed of trust, to have the sheriff execute the trust, and his right to do so, depended upon "the death" of Allen James, the trustee, or "his absence from the State of Missouri, or his refusal to act."   As he was still living in Moniteau county when the bank requested the sheriff to act, and when the latter assumed the duties of the trust, and made the sale, this right was narrowed to "the refusal of Allen James to act."   Considerable time was devoted on the trial to showing that prior to the purchase of the notes of plaintiff by Miller, and subsequently by the bank, there had been ineffectual efforts to get James to sell the land for Doctor Powers, but whatever the cause for not making the sale then might have been, it is conclusively established that up to November 12, 1897, the bank conceded and recognized that James was still the trustee, and authorized and empowered to make the sale under the deeds of trust, for on that date it wrote him that the extension which it had granted Kelsay, the plaintiff, on his notes, had expired, and requested him to proceed to advertise, and sell, and whether "he refused to act" must be determined from his conduct after that date in the light of the bank's letter.   That letter was in these words:   "The ten days extension granted in the matter of selling the land of J. R. Kelsay has expired. You will please proceed and advertise the land in next week's

edition of one of our papers. If you fail to come we will have the advertisement inserted."

James did not come to California because, he testifies, he understood from this letter that the bank would cause the advertisement to be made in his name, as trustee, and he was not able to get to town at that time. He was sick and supposed they would advertise it in his name. He testifies that he did not refuse to make the sale; that on the day of the sale he came to California. He was present at the sale by the sheriff. After the land was put up he spoke up and said the sale was illegal. On cross-examination he was asked by counsel, "Why did you make the declaration that the sale was illegal?" and answered, "Well, it was not advertised in my name."

Lycurgus Miller testified he was present at the sale and bid $925 on the land and then quit for two reasons, one was he would have to borrow money to pay his bid, and the other was that Allen James came up in front and said it was an illegal sale, and he didn't care to get into a lawsuit if he bought. Some bids had been made, he thinks, when Mr. James came up and when near Charles Miller, one of the purchasers, made the statement that "the sale was illegal."

Mr. G. A. Burkhardt, the vice-president of the bank, testified in behalf of the bank, that he was present at the sale; stood against the wall of the courthouse. The sheriff stood in front of one of the pillars while crying the sale, and Mr. James came up and made the remark, *"I never refused to sell this land,"* and the witness made no answer to him.

The sheriff testified he didn't hear Mr. James say the sale was illegal, or that he had not refused to make it. The plaintiff was not present, having arranged with his son and Bagley that they should raise the amount of the mortgage, and stop the sale.

The circuit court found, as a matter of fact, that the trustee James did not refuse to make the sale, and that

the sheriff had no authority to make it, and this is assigned as error.

The defendants insist that the failure of the trustee to advertise when directed, constituted a refusal to act, within the meaning of the deeds of trust, and thereby conferred full power on the sheriff as alternative trustee to make the sale. They cite in support of their contention Chase v. Williams, 74 Mo. 429. In that case it appears that the holder of the notes requested Mr. Shackleford, the trustee in the deed of trust, to make the sale, but Mr. Shackleford said it would be inconvenient for him to sell the land on account of his having to attend circuit court in Saline county, and under the deed it was required that the sale should be made at Huntsville, in Randolph county, and he, Shackleford, lived twenty-five miles from Huntsville, and thereupon the holder of the note requested the sheriff of Randolph county to make the sale. The sale was attacked in part on the ground that Mr. Shackleford did not refuse *absolutely* to sell, but only at that time but this court held that Mr. Shackleford's answer to the request was a refusal to sell then, and that he would only sell at his own convenience, and the holder was not bound to await his convenience, and was authorized to call upon the sheriff to make the sale. But the facts here are very different. The request to the trustee, James, was contained in the letter of November 12, 1897, and the trustee did not refuse to sell and testifies that he construed the letter to mean that the bank would cause the notice of the sale to be given in his name, and that he came to California, the place of sale, on the day of sale. We think this is the fair and reasonable interpretation of the letter, and that the mere failure to give the notice himself can not be construed as a refusal by the trustee to act. Nor do we think the evidence makes out a case of collusion between plaintiff and James to prevent the sale. It is evident from the testimony of the trustee that he was a farmer living fourteen miles distant, and there was nothing in the letter to apprise him of the bank's intention

to substitute the sheriff in the trust, if he did not act during the ensuing week, but its language was well designed to lead him to the conclusion which he reached, that the sale was to be made by himself.

If the bank intended, as it now appears it did, to have the sheriff make the sale, it should have said so.

It is evident it did not desire James to sell, but wanted the sheriff to do so, in order to make its judgments in addition to the amount of its mortgage notes.  The power to sell under a deed of trust is a matter of convention and contract between the parties, and they are authorized to select their own trustee, and presumably they do it because of their faith in his fairness, and another can not be substituted in his stead unless it is done in the manner, and on the conditions, to which the parties have agreed.  The power to sell is derived from the deed of the grantor in the deed of trust, and does not exist independent of it.  It is a personal trust which requires the trustee to be present and supervise the proceedings in making the sale, and to act with impartiality in preserving the rights of both parties.  The burden was on defendants to show that the sheriff was substituted in pursuance of the deed and we think they have failed to sustain it, and the circuit court did not err in so finding, and it must be held the sheriff had no authority to sell.

II.   The trial court further found that the Millers, who purchased at the sale and took deeds to the land in suit from the sheriff, had notice of the illegality of the sale and took their deeds subject to all its infirmities.  The Millers were joint purchasers and notice to one was notice to both.  The evidence shows that Warren Miller had owned the notes secured by these deeds of trust.   He knew Allen James was the trustee therein.   Both he and Charles P. Miller were present at the sale and Charles P. Miller saw Allen James at the sale and heard him say that the sale was illegal, while he, Charles P. Miller, was bidding on the land, or, at all events, before he

or Warren had paid anything on their bids. Knowing Allen James was the trustee in the deeds of trust and hearing his warning before they had paid over their purchase money, they had actual notice that the sale was being made by an unauthorized trustee and therefore illegal. This notice came not from a stranger who had no authority to speak, but from the trustee named in the deed. The facts and circumstances which came to the knowledge of Charles Miller prior to and on the day of sale, must be held sufficient to have put men of ordinary prudence on their inquiry. The one man who was authorized to make the sale by the terms of the deeds of trust was present giving notice that the sale was illegal and that he had not refused to make it, and though Lycurgus Miller on this account refused to bid further after hearing this warning, Charles P. Miller, who says he heard it, made no inquiry whatever of Allen James, the trustee, as to his reason for saying the sale was illegal. Had they followed "the voice of suggestion" they must have learned the facts which we hold rendered the sheriff's sale invalid. [Maupin v. Emmons, 47 Mo. 304; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 292; Stewart v. Severance, 43 Mo. 322.]

III. But it is said that the plaintiff took no action to enjoin the sale. To this contention two answers suggest themselves. The purchasers knew, or as we hold, were bound to know if they had used ordinary prudence, all that plaintiff knew and were in no way misled by his inaction, and moreover, the trustee gave the timely warning, which they refused to hear. And the plaintiff's conduct finds its explanation in the fact that he had induced his son and Bagley to make an arrangement to take up the mortgage and to stop the sale. While defendants urge that the offer of the Bank of Morgan county to pay the debt before the sale, was not strictly a tender, it must be considered a pregnant circumstance going to show the deliberate purpose of the Farmers & Traders Bank to defeat the homestead exemption of plaintiff. The bank refused

the money, not because it was not a sufficient tender, but because it did not cover the judgments which were not and could not be a lien on the homestead.    [Bank of Versailles v. Guthrey, 127 Mo. 189.]

The further claim that plaintiff is estopped because a part of the purchase money was directed to be paid over to the defendants by the circuit court, no notice of such action having been given to plaintiff, we think is without merit.    The judgment had been obtained March 12, 1895, and the execution issued November 30, 1897.    From the return of the sheriff it appears it was levied on the homestead of plaintiff, but no notice of such levy was given plaintiff and no attempt was made to sell the lands under said executions, but the sheriff returns that after having sold plaintiffs said lands by virtue of two deeds of trust, there remained in his hands $754.65, which he seized and levied upon by virtue of said execution.    Afterwards, on February 12, 1898, without notice to plaintiff, said bank through its counsel appeared and represented to the court that the said sheriff had theretofore returned an execution issued in pursuance of an order of court as fully satisfied, and still had the proceeds in his hands, which the court ordered paid over to plaintiff in the execution.    No pretense is made that the sheriff notified the plaintiff of his homestead exemption or of the other exemptions to which he was entitled under the law.    [Sections 4907 and 4906, R. S. 1889; Stinson v. Call, 163 Mo. 323.]

The sheriff proceeded in this matter, with the same disregard of the plaintiff's rights, as sheriff, which seems to have characterized his sale of the land as trustee.    If his sale had not otherwise been invalid, the mode of selling resorted to and the sale of the land for $1,550 when only $786 were due on both notes, plainly shows that the sheriff regarded himself as the agent of the bank only, and was wholly unmindful that if he essayed to act as a trustee, the duty of impartiality and scrupulous regard for the rights of the debtor as well as the cred-

itor, devolved upon him. The purchasers were present and knew of the methods resorted to, by which twice as much land was sold as was necessary. This sale must have been set aside upon timely application for this, if for no other reason.

This action was brought in February, 1898, and the charge of laches is not supported by the evidence.

The decree of the court permitting plaintiff to redeem by paying the amount of the two notes and interest secured by the two deeds of trust was just and is affirmed. All concur.