CLARKSON et al. v. RUIZ et al.

No. 9854.

Court of Civil Appeals of Texas. San Antonio.

March 31, 1937.

On Rehearing July 14, 1937.

Rehearing Denied Aug. 11, 1937.

Boone, Henderson, Boone & Davis, of Corpus Christi, and Perkins & Floyd, of Alice, for appellants.

Lloyd & Lloyd, of Alice, and R. E. Seagler, of Houston, for appellees.

MURRAY, Justice.

This suit was instituted in the district court of Duval county, Tex., by appellants, Mrs. J. F. Clarkson, a feme sole, suing herein individually and as independent executrix of the last will and testament of J. F. Clarkson, deceased, Helen Clarkson, a feme sole, Palmer Clarkson, a minor, suing herein by and through his next friend and mother, Mrs. J. F. Clarkson, Olive C. Williams and her husband, J. O. Williams, and Eliza Robles, a minor, suing herein by her guardian and father, Filomeno Robles, as next friend, against Jesus V. Ruiz, individually and as executor of the estate of Cesaria Quintinalla de Ruiz, deceased, Mucio V. Ruiz, Geo. B. Parr and his wife, Thelma D. Parr, Atlee Parr, Humble Oil & Refining Company, Sun Oil Company, R. E. Glover, Philip T. Wright, Walter Goldston, John Turnham, C. H. Karren and wife, Jennie Karren, L. L. Buchannan, J. T. Wright, J. O. Trevino, and Gregoria C. de Trevino, all of whom are appellees herein, seeking to set aside the judgment rendered in the district court of Duval county in cause No. 3516, styled Jesus V. Ruiz et al. v. Mucio V. Ruiz, partitioning Survey No. 553, Certificate No. 1/950, Abstract 152, B. S. & F. original grantee, containing 640 acres, and giving to Geo. B. Parr the west one-half of said survey and to Mrs. J. F. Clarkson and her children, Helen Clarkson, Palmer Clarkson, and Mrs. Olive C. Williams, the east one-half thereof.

The defendants below, appellees here, answered setting up numerous defenses to this cause of action, and Mrs. Thelma D. Parr, joined by her husband, Geo. B. Parr, pleaded a cross-action alleging that she had purchased, at a trustee's sale, the interest of J. F. Clarkson in said Survey No. 553, and that her husband, Geo. B. Parr, had conveyed to her his interest in said Survey No. 553, and that she was therefore the owner of the entire survey.

A trial was had before a jury and resulted in an instructed verdict for numerous defendants. A number of special issues were submitted to the jury, and upon the jury's answers to these special issues judgment was rendered denying Mrs. J. F. Clarkson and the other appellants herein any recovery upon their original cause of action, but allowing Mrs. Thelma D. Parr to recover, upon her cross-action, the title and possession of said Survey No. 553. Hence this appeal.

The record shows that prior to all of this litigation Mrs. Cesaria Quintinalla de Ruiz, a widow, and her two sons, Jesus V. Ruiz and Mucio V. Ruiz, and her granddaughter, Eliza Robles, owned approximately 5,000 acres of land situated in Duval county, including the land here in controversy, known as Survey No. 553.

There was considerable litigation in reference to this land, and Mrs. Ruiz and her children and grandchild were represented by Geo. B. Parr and J. F. Clarkson, who were practicing law in Duval county; Geo. B. Parr being county judge and J. F. Clarkson being county attorney. As a fee for their services, Mrs. Ruiz and her two sons, joined by Filomeno Robles, father and legal guardian of Eliza Robles, conveyed Survey No. 553 to J. F. Clarkson and Geo. B. Parr. There was no order of the probate court authorizing Filomeno Robles to make this conveyance, and therefore same was not binding on his ward, Eliza Robles.

In September, 1932, J. F. Clarkson and Geo. B. Parr filed cause No. 3516, styled Jesus V. Ruiz et al., v. Mucio V. Ruiz,

seeking a partition of all the Ruiz lands, including Survey No. 553. In this cause Eliza Robles was named as a party plaintiff, suing by and through her grandmother, Cesaria Quintinalla de Ruiz, as next friend. The fact that this minor had a legally appointed guardian in her father, Filomeno Robles, was entirely ignored. J. F. Clarkson died September 24, 1932, and thereafter the litigation was handled by Geo. B. Parr and the law firm of Lloyd & Lloyd, of Alice, Jim Wells county. Mrs. J. F. Clarkson and her children were, by amended pleadings, made parties plaintiff in this cause and ultimately a judgment was obtained, as heretofore stated, partitioning Survey No. 553, and giving to Geo. B. Parr the western one-half thereof, and to Mrs. Clarkson and her children the eastern one-half thereof. Mrs. Clarkson contends that she did not authorize any one to represent her in this suit, and did not authorize any one to make her a party plaintiff in the suit. Geo. B. Parr contends that he had a telephone conversation with Mrs. Clarkson in which she did authorize him to so represent her.

At the time this partition was had, oil had been discovered near the town of Freer, about a mile and a half or two miles west of Survey No. 553. Mrs. Clarkson contends that this partition was inequitable in that it gave to Geo. B. Parr the half of the survey lying nearest to the old field, and that if the survey had been divided by a line running east and west, rather than by a line running north and south, each of the co-owners would have had an equal opportunity to have land lying near the oil field. Oil has since been discovered on the western half of Survey No. 553.

Eliza Robles contends that she owns a two-twelfths interest in Survey No. 553, in view of the fact that her guardian, Filomeno Robles, was not authorized by the probate court of Duval county to convey her interest in this survey to Clarkson and Parr; that her grandmother Mrs. Cesaria Quintinalla de Ruiz was disqualified from representing her in the partition suit, as next friend, because there was a conflict of interests existing between her and her grandmother, and therefore she should have been represented by her father, who had no interest in the Ruiz land and was her legally appointed guardian. Both Mrs. Clarkson and Eliza Robles contend that Geo. B. Parr was not qualified to represent them in the partition suit, because there was a con-

flict of interests between Geo. B. Parr and his alleged clients.

It is admitted by the appellants that but for the discovery of oil on the western half of Survey No. 553 this suit to set aside the partition decree would not have been instituted. The first question presented is whether or not Eliza Robles owned an interest in Survey No. 553, and was therefore a necessary party to the partition of this survey. We conclude that the record clearly shows that Eliza Robles owned a two-twelfths interest in Survey No. 553, and that the act of her guardian, unauthorized by the probate court, conveying her interest in said survey to Clarkson and Parr, was absolutely void, and her interest in said survey was not affected thereby. There were no pleadings in the partition suit showing her interest in this survey, but, on the contrary, it was alleged to be owned one half by Geo. B. Parr and the other half by the heirs of J. F. Clarkson, deceased.

The fact that Eliza Robles was shown to have owned an interest in other lands, partitioned at the same time by the decree entered in cause No. 3516, was not sufficient to divest her of her interest in Survey No. 553. The further fact that she was represented by her grandmother, as next friend, who had a conflict of interest with her at the time, and by an attorney who was, at the same time, contending that she owned no interest in Survey No. 553, is sufficient to render this partition decree void as to Eliza Robles, the minor, and to show that she was not properly made a party to the partition suit. The partition suit, in so far as it affected Survey No. 553, should have therefore been set aside and held for naught. The fact that Eliza Robles was given a one-sixth interest in the remaining portion of the Ruiz land in no way precludes her from at this time setting up her one-sixth interest in Survey No. 553. Maxwell's Unknown Heirs v. Bolding (Tex. Civ.App.) 11 S.W.(2d) 814; Ward v. Hinkle, 117 Tex. 566, 8 S.W.(2d) 641, 645; Stephens v. Hewett, 22 Tex.Civ.App. 303, 54 S.W. 301, 302; Sandoval v. Rosser (Tex. Civ.App.) 26 S.W. 930; Pearce v. Heyman (Tex.Civ.App.) 158 S.W. 242.

This brings us to a consideration of that part of the judgment which gave to Mrs. Thelma D. Parr the title and possession to the entire Survey No. 553. Mrs. Parr claimed to own the interest of J. F. Clarkson in this survey by reason of having been the purchaser at a foreclosure proceeding,

by a substitute trustee, under the power of sale in a certain deed of trust alleged to have been given by J. F. Clarkson, during his lifetime, wherein J. R. Salinas was named as trustee and Vicente Salinas was named as beneficiary, and a deed of trust lien created against J. F. Clarkson's interest in Survey No. 553, to secure the payment of a note of the principal sum of $200, signed by J. F. Clarkson and payable to Vicente Salinas. No mention of this note and deed of trust was made in any of the previous suits, nor in the original answers of Geo. B. Parr and Thelma D. Parr, until a second amended answer was filed, two days after this cause was called for trial, at the April term, 1935, of the district court of Duval county, at which time, for the first time, it was alleged that Mrs. Thelma D. Parr in fact owned all of the interest of J. F. Clarkson in Survey No. 553.

Geo. B. Parr testified that he purchased a $200 note secured by the deed of trust alleged to have been signed by J. F. Clarkson; that the note became due and that he called upon J. R. Salinas to sell Clarkson's interest in Survey No. 553, under the power given him in the deed of trust; that J. R. Salinas refused to act, and that he (Geo. B. Parr) then appointed one Charles T. Stansell, Jr., substitute trustee, and that the said Stansell then proceeded to post notices, and did, on the 2d day of October, 1928, sell Clarkson's interest in Survey No. 553, and that he (Geo. B. Parr) purchased the same for his wife, Mrs. Thelma D. Parr; that the said Charles T. Stansell, Jr., acting as substitute trustee, then executed a deed conveying all interest of J. F. Clarkson to Mrs. Thelma D. Parr; that he took this deed and exhibited it to his wife and then placed it in a letter file in his office. None of the instruments involved in this alleged foreclosure proceeding were ever placed of record, but were produced for the first time in 1935, some seven years after the alleged sale.

The validity of this alleged trustee's sale is attacked upon the ground that Charles T. Stansell, Jr., was not authorized to make the sale. The deed of trust provided, among other things: "But, in case of failure of default in the payment of said promissory note together with the interest thereon accrued, according to its terms and face, at the maturity of the same then in such event, said J. R. Salinas, is by these presents fully authorized and empowered, and it is made his special duty, at the request of the said Vicente Salinas, at any time after the maturity of said promissory note, to sell the said above described property to the highest bidder, for cash, at public out-cry in front of the Court House door of said County, the first Tuesday of any month, between the hours of 10 o'clock A. M., and 4 o'clock P. M., first giving notice of the time, place and terms of sale for at least twenty days successively next before the day of said sale, by posting up written or printed notices of such sale at three public places in the County of Duval, State of Texas, one of which shall be at the Court House door of San Diego, said County, and by giving such other notice as is or may be required by law, and after said sale as aforesaid, to make to the purchaser or purchasers thereof a good and sufficient deed in law to the property so sold, with the usual conveyance and warrants, and to receive the proceeds of said sale, and the same to apply to the payment of said note, the interest thereon accrued, and the expenses of executing said trust, including 10% (ten per cent.) commission to said Trustee, holding the remainder thereof subject to the order of myself the said J. F. Clarkson. It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed, and it is hereby specially provided that should the said J. R. Salinas, from any cause whatever, fail or refuse to act, or become disqualified from acting as such Trustee, then the said Vicente Salinas, or other holder of said indebtedness, shall have full power to appoint a substitute, in writing, who shall have the same powers as are hereby delegated to the said J. R. Salinas, and I by these presents fully and absolutely ratify and confirm any act and all acts which the said J. R. Salinas, or his substitute as herein provided, may do in the premises by virtue hereof."

■ Thus it will be seen that J. R. Salinas, trustee, could only act upon the request of Vicente Salinas. The record affirmatively shows that Vicente Salinas was not the one who requested J. R. Salinas to act, but that Geo. B. Parr was the one who made the request. It is clear under our decisions that where a foreclosure is had under the power given in a deed of trust, the sale must be conducted, and all stipulations and provisions must be strictly complied with, before such a foreclosure is valid. It is said

in the case of Bowman v. Oakley (Tex.Civ. App.) 212 S.W. 549, 550 (writ of error refused), quoting from Perry on Trusts (3d Ed.) § 602:

" 'It must be constantly borne in mind that the power in the deed or mortgage must be strictly followed in all its details. The power of transferring the property of one man to another must be followed strictly, literally, and precisely. Such a power admits of no substitution and of no equivalent, even in unimportant details. If the power contains the details, the parties have made them important; and no change can be made even if the mortgagor would be benefited thereby, nor if a statute provides a different manner. If the power is not executed as is given in all particulars, it is not executed at all, and the mortgagor still has his equity of redemption.'

"As supporting this quotation, we give the following from the case of Bemis v. Williams, 32 Tex.Civ.App. 393, 74 S.W. 332:

" 'It is the unbroken rule that a power of sale given in a deed or mortgage must be strictly followed in all its details. The authority to alienate and convey the property of another is an extraordinary and most important grant of power—so much so that courts governed by the common law for a long time viewed such grants with suspicion, and, although they increased in numbers until they are in universal use in England and America, the strictness required in their execution has never been relaxed; and, even in minor and seemingly unimportant details contained in such grants of power, no change will be tolerated, but a strict and literal compliance therewith is demanded. The trust must be executed in the mode and upon the exact terms and conditions prescribed in the deed of trust. If the property is to be sold in a certain place at a certain time, or in a certain manner, as at private sale or public auction, with the consent or at the request of certain persons, these details must be literally followed and carried out, because the owner of the property has so provided  The details may appear frivolous and unimportant, but the maker of the deed saw proper to guard and protect his property by means of them, and for that reason they became important and essential. In this case the power of sale vested in the trustee remained dormant and inactive until called into action by the request of the beneficiary. Until that request was made, he had no power to act, and without that request there could not

be a failure or refusal on his part to perform the powers given him by the deed of trust.'

"On the same subject it was said by our Supreme Court in the case of Boone v. Miller, 86 Tex. 74, 23 S.W. 574:

" 'The power of sale in a deed of trust is an important power, granted by the maker, and he has the right to place upon it such limitations and conditions as he may deem proper for his own protection. When the exercise of a power is made to depend upon the direction or request of a given person, then the direction or request of that person must be given in order to authorize the exercise of the power.'

"Also in the case of Boone v. Miller, supra, it was held by our Supreme Court that where a deed of trust authorized a sale of the land, at the request of the payee named in the deed of trust, the sale by a trustee under such power was void when made at the request of any other party. See, also, Bomar v. West, 87 Tex. 299, 28 S.W. 519; Michael v. Crawford, 108 Tex. 352, 193 S.W. 1070; Crosby v. Huston, 1 Tex. 203; Bracken v. Bounds, 96 Tex. 200, 71 S. W. 547; Cheveral v. McCormick, 58 Tex. 440; Chestnutt v. Gann, 76 Tex. 150, 13 S.W. 274; Davis v. Hughes, 38 Tex.Civ. App. 473, 85 S.W. 1161; Rawlings v. Lewis [Tex.Civ.App.] 191 S.W. 784; Kelsay v. Bank, 166 Mo. 157, 65 S.W. 1007."

■ It is clear that J. R. Salinas had no authority to act, or to decline to act, under the power of sale in the deed of trust until requested to do so by Vicente Salinas. The request by Geo. B. Parr was insufficient to authorize the exercise of this power, and it remained dormant until a request was made by Vicente Salinas.

■ There was another matter that happened upon the trial of this case, which caused a further suspicion upon this alleged foreclosure proceeding: The $200 note was produced upon the trial and was marked for identification by the court reporter, at which time opposing counsel expressed their desire to examine the note, which request was refused, and the note was not at that time offered in evidence. On the next day, when attorneys for Mrs. Clarkson again requested to examine the note, it was stated that the note had been lost. We conclude that the fact that Geo. B. Parr filed a number of pleadings containing allegations inconsistent with the

idea that there had ever been a foreclosure of J. F. Clarkson's interest in Survey No. 553, and that no mention was ever made of same until amended pleadings were filed in this cause, and the further suspicious circumstance of the note being first tendered in evidence and afterwards withdrawn and lost, without opposing counsel ever having an opportunity to examine same, and the further fact that the power of sale provided for in the alleged deed of trust was never properly invoked, no effect should have been given to the alleged foreclosure, and the court erred in rendering judgment awarding Mrs. Thelma D. Parr the interest of J. F. Clarkson, deceased, in Survey No. 553.

Accordingly, the judgment of the trial court will be reversed and this cause remanded for another trial, not inconsistent with the holdings herein made.

Reversed and remanded.

### On Motions for Rehearing.

All parties have filed motions for rehearing, and all parties request us, not to reverse the entire judgment, but, in the event any part thereof must be reversed, that we reverse only that part which affects Survey 553. We have concluded that this request should be granted, and our former judgment reversing the entire judgment below will be set aside, and the judgment of the lower court will be in all things affirmed as to all appellees, except Geo. B. Parr, Thelma D. Parr, and Humble Oil & Refining Company, and as to said excepted appellees the judgment will be reversed and remanded, for the purpose of having the trial court determine whether or not the sale of Clarkson's interest in Survey 553, by virtue of the power of sale in the deed of trust, was a valid sale, and for the further purpose of partitioning, if proper, Survey 553 between the joint owners thereof; it having been decided that the minor, Eliza Robles, is the owner of a two-twelfths undivided interest in said Survey 553, and whether or not Mrs. Clarkson is the owner of a five-twelfths undivided interest in this survey, being dependent upon whether or not the trustee's sale is found to be valid or invalid. The trial court should also determine what sums of money, if any, are due by Humble Oil & Refining to Eliza Robles and to Mrs. Clarkson, if she be found to own an undivided interest in Survey 553. The costs of this appeal shall be taxed against Geo. B. Parr and Thelma D. Parr.

We wish to correct our statement in our original opinion to the effect that: "None of the instruments involved in this alleged foreclosure proceeding were ever placed of record, but were produced for the first time in 1935, some seven years after the alleged sale."

The record discloses that the deed of trust was dated February 4, 1928, and recorded on the 3d day of May, 1928. However, this correction in no way affects the decision.

The judgment, as above indicated, will be affirmed in part, and reversed and remanded in part. In like manner all motions will be granted in part and overruled in part.