cided the same adversely to appellant's contention.

We think the facts are sufficient to support such a conclusion.

The judgment is therefore affirmed.

## SALADINER v. POLANCO et al.
### No. 9063.

Court of Civil Appeals of Texas. Austin.

Feb. 25, 1942.

Rehearing Denied April 1, 1942.

532

See, also, 147 S.W.2d 265; 160 S.W.2d 537.

Coleman Gay and Ewell H. Muse, Jr., both of Austin, for appellant.

Polk Shelton, Chas. F. Herring, Looney & Clark, and Everett L. Looney, all of Austin, for appellees.

BAUGH, Justice.

Appeal is from a judgment in favor of appellees, based upon a special issue verdict, against appellant for damages for death of the wife of Mike Polanco and mother of their minor children, the other appellees, represented by Mike Polanco as next friend. The injuries causing the death resulted from a collision between a truck in which deceased was riding, and one driven by an employee of appellant, on a highway in Travis County, Texas, in August, 1939.

Saladiner filed his plea of privilege to be sued in Brazos County, where he resided, which was controverted, overruled, and appeal taken. That order overruling such plea was reversed and the cause remanded to permit the plaintiff to amend his controverting plea, it being admitted that sufficient venue facts to sustain venue in Travis County were shown on the first trial of that issue. See Saladiner v. Polanco, Tex.Civ.App., 147 S. W.2d 265.

While the former appeal on the venue issue was pending, trial was had on the merits and from the judgment therein rendered this appeal is prosecuted. The first contention made by appellant is that because of our reversal of the venue issue on former appeal, a reversal of the judgment on the merits must necessarily follow, citing numerous cases in support of that contention, of which O'Brien v. Smith, Tex.Civ. App., 80 S.W.2d 459; Shell Pet. Corp. v. Grays, Tex.Civ.App., 87 S.W.2d 289, and Saulsbury v. Atlas Supply Co., Tex.Civ. App., 144 S.W.2d 930, may be cited as typical. In each of these cases, however, the appellate court found as a matter of law that venue did not lie where the suit was filed, and so decreed. That being true, under numerous decisions holding that the trial court was without power to determine the merits, reversal of the judgment on the merits followed as a matter of course. In none of them, however, did venue lie where suit was filed. Nor was the appeal on the venue issue remanded to permit the plaintiff to amend his pleadings to conform to his proof of venue facts. Such is the case here presented. The only case directly in point which has been cited to us, or which we have been able to find, on the exact question here presented, is that of Burton v. Lowry, Tex.

Civ.App., 77 S.W.2d 1059. Manifestly this question was not there carefully considered; and the report of that case clearly indicates that the venue issue and the merits were both tried together and a single appeal taken. While such procedure was formerly recognized as proper (See Gilmer v. Graham, Tex.Com. App., 52 S.W.2d 263; 43 Tex. Jur. § 107, p. 842); it has been held to be erroneous, where objected to, and that a defendant is entitled to a separate trial and a separate appeal of the venue issue from that on the merits. Newlin v. Smith, 136 Tex. 260, 150 S.W.2d 233. That being true Burton v. Lowry is not now authority for appellant's contention.

Considering the appeal on its merits, two of appellant's contentions, because inter-related, may properly be considered together. These complain of argument of counsel to the jury and improper conduct of the jury, which it is urged probably resulted therefrom, and which require under now settled rules of decision, a reversal of this case.

Much has been written on both of these questions. No little confusion has resulted from the application of the general rules laid down in the decisions to the facts of the particular cases. Segregated excerpts may be lifted from adjudicated cases, which, if the facts of the particular case in which they are found be disregarded, would warrant either an affirmance or reversal of almost any borderline factual case. It may be said that the numerous cases involving issues of improper argument and jury misconduct have created a twilight zone, somewhat hazy, and whose boundaries are not clearly marked, between the type and character of such arguments and misconduct which will, on the one hand, require a reversal; and which will, on the other, warrant an affirmance of the trial court's judgment. And in the last analysis, the reversal or affirmance must depend upon the applicability of recognized general rules to the facts of the particular case.

In the instant case the argument complained of, and which appellant insists amounted to telling the jury how to answer the special issues submitted so as to enable plaintiffs to recover a judgment against the defendant, was as follows:

"I am giving you the benefit of my opinion and my judgment, and that under our theory of the case that Arthur Hearn was negligent and that his negligence caused the death of Mrs. Polanco. I am telling you that under that theory of the case, I think you ought to answer questions 1 to 28, inclusive, emphatically 'Yes', every one of them. I believe the evidence justifies you doing it, and when you go out and study it, see if you don't agree with me.

"29 is about that unavoidable accident. I am going to talk about it just a minute. Now, unavoidable accident, the court tells you in simple language—I am not trying to quote—is, in effect, is one which happens without negligence of anybody, or at least, of either party to the accident. If either party is negligent, it is not an unavoidable accident, because it could have been avoided. If that negligence hadn't existed, then I tell you that under our theory of the case and in my judgment you should answer questions 30 to 101, inclusive, every one of them, I think, emphatically, 'No', because all of them seek to shift the burden away from Arthur Hearn's negligence and put it where, in my judgment, it does not belong."

The trial court qualified the bill of exception to this argument with the statement that prior thereto one of the attorneys for appellant, in his argument, had stated that the plaintiff's attorney had not explained their "theory of the case," and challenged them to do so.

The misconduct of the jury complained of was that upon retirement, after election of a foreman, the jury first decided that the plaintiffs should recover, then agreed upon the amount, and then proceeded to answer the special issues so as to accomplish that result. The uncontroverted testimony of the four jurors who testified upon the hearing on the motion for a new trial was that they did determine that the defendant's driver was to blame and the amount of plaintiffs' recovery before they answered any of the questions submitted to them; and then took them up seriatim.

The first 28 issues submitted the plaintiffs' grounds of recovery. That is, that the driver of appellant's truck was driving at a speed, a, in excess of 45 miles per hour; b, in excess of 25 miles per hour; c, at a greater rate of speed than a prudent person would have driven same; d, that he failed to keep it under reasonable control; e, that he failed to keep a proper lookout; f, that he failed to sound his horn; g, that he failed to attempt to pass the other truck on the left; h, that he failed to timely apply his brakes; i, that he attempted to pass the other truck on the right; and j, that he failed to slow down. The jury found that he was guilty of each, that each was neg-

534

ligence, and a proximate cause of the injury which caused the death of Polanco's wife.

Issues 30 to 102, submitted appellants' theory of the case, and inquired whether the driver of the truck in which the deceased was riding was, a, under the influence of intoxicating liquor; b, whether he turned his truck suddenly to the right in the path of appellant's truck without warning; c, whether he suddenly slowed down his truck without warning; d, whether his truck had a rear light visible 500 feet distant; e, whether it was lighted at the time; f, whether he had a clearance lamp or reflector on the left side of his truck; g, whether the deceased knew that such driver had been drinking beer prior to the time; h, whether the deceased had requested such driver to let someone else drive the truck; i, whether the truck in which she was riding was overcrowded; j, whether the deceased was riding at a place on the truck not designated for passengers; k, whether such truck was being driven at the time to the left of the center line of the highway; l, whether a car was approaching from the opposite direction; m, whether the deceased timely received proper medical attention; and whether these various matters constituted negligence and proximately caused, contributed to cause, or were independent intervening causes of, the injuries resulting in the death of Mrs. Polanco. All of these issues were uniformly answered "No".

The truck in which deceased was riding was a borrowed truck, being an old Dodge car which had been converted into a truck with a cab and one seat. The bed of the truck was flat, constructed of lumber, was about 6 feet square with 10 or 12-inch side boards and no endgate. At the time of the collision it carried 13 passengers, 3 adults and one infant in the front seat, and 3 adults and 6 children of varying ages in the rear. The deceased was sitting in the bed of the truck with her back against the cab and facing to the rear. The only evidence on the issue of a reflector on the left side of the truck was that there was none. Notwithstanding these facts the jury found that the truck was not without a side reflector; was not overcrowded; and that the deceased was not riding in a place in said truck not designed for passengers. Some of the jurors testified that there was a difference of opinion among the jurors, particularly as to whether the evidence showed that there was a side reflector on the truck; but that

they concluded that that issue was immaterial and answered it in the negative along with the others. Under the testimony the jury answered all these 109 questions within 30 minutes to an hour and a half after the case was submitted to them, and a good portion of that time was consumed in a discussion as to how the $10,600 should be divided between the father and the two minor children. These jurors also testified that notwithstanding all these matters, each question was carefully read and answered from the evidence.

It is not necessary for us to determine the effect of the issues as to the side reflector, the overcrowded condition of the truck, or whether deceased was riding in place designed for passengers, if same had been answered affirmatively, might have had on appellees' right of recovery in view of the answers to other issues. But they do become important, in view of counsel's argument, the uncontroverted evidence as to what the jury did first, the number and character of the issues submitted, the time consumed by the jury in answering all of them, and the state and quantum of the proof as to some of them, in determining whether the jury rendered its verdict on these many issues from the evidence; or first arrived at a general verdict, and then undertook to answer the special issues so as to accomplish that result, in keeping with the above quoted argument of counsel. The record strongly indicates, if indeed it does not clearly show, that they did.

 Reverting now to argument of counsel, it is clear we think that the first portion above quoted is not improper. Counsel may properly suggest how any issue or group of issues should be answered so long as he predicates his argument on the evidence. Dallas Ry. & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304; 41 Tex.Jur., § 341, p. 1203, and authorities supporting the text. This was what counsel did as to issues 1 to 28. But his argument as to issues 30 to 102 made no such distinction, was a repudiation of all defenses urged by appellant, predicated upon counsel's judgment, and inferentially that if they did not so answer them, their findings on issues 1 to 28 might not entitle plaintiffs to a judgment. The test of the propriety of such an argument, as stated in Texas & N. O. Ry. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160, 164, is: "provided the argument is not so made as to inform the jury of the effect the

answers will have upon the judgment to be rendered or as to cause the jury first to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result." In the light of what the jury did it may be reasonably inferred that such was the effect of the argument complained of.

■ Nor can the argument be wholly justified on the ground that it was provoked. A mere challenge of opposing counsel to state plaintiffs' theory of the case cannot be construed as an invitation that, in addition to such statement, he may improperly request the jury to answer specific issues so as to sustain a recovery, if such be its effect, by plaintiff on such theory.

■ Little need be added to what we have already said on the issue of misconduct of the jury. It has been repeatedly held to be error for the jury to first determine liability generally, arrive at the amount, and then proceed to answer special issues so as to accomplish such a result. Allcorn v. Ft. Worth & R. G. R. Co., Tex. Civ.App., 122 S.W.2d 341, writ refused, and cases therein cited; 41 Tex.Jur., § 346, p. 1211. We need but quote two questions and the answers thereto by two jurors on such hearing to bring the instant case within the above rule:

"Q. State whether or not, Mr. Hall, that after the jury had decided or had voted to—that the plaintiff should recover, they went back and answered the questions with that in mind and to reach that result? A. Yes, sir."

The juror Harry Smith testified that after the jury had first determined that the driver of appellant's truck was guilty, and the amount plaintiffs should recover, they then took up the questions from No. 1 on down and answered them. At this point he was asked:

"Q. State whether or not you answered those in such a way as to give the plaintiffs the money you had voted to give them? A. Sure, we had to * * *."

As to what transpired in the jury room there was no material conflict in the testimony of the jurors. What they did is not controverted. Consequently there was no issue presented to the trial court as to whether the misconduct in fact occurred. 41 Tex.Jur., § 348, p. 1213, and supporting cases.

■ If there be reasonable doubt as to the effect of such misconduct it must be resolved against the verdict. Dallas Ry. & Terminal Co. v. Garrison, Tex.Com. App., 45 S.W.2d 185. In Montgomery Ward & Co. v. Levy, Tex.Civ.App., 136 S.W.2d 663, 672, writ dismissed, judgment corrected, it is said that in such case "the presumption of law is indulged that it had a harmful effect." The fact that there was evidence from which the jury could have found that the deceased and the other occupants of the truck were engaged in a joint enterprise; that the driver of the truck was under the influence of intoxicating liquor, was guilty of contributory negligence, and that there was an independent intervening cause, raise a reasonable doubt as to the effect of the misconduct.

■ The next question presented is whether there is such a conflict of interest between Polanco in his own right, and the interest of the children whom he represents as next friend, in the recovery sought, as to disqualify him to represent them herein. Appellant insists that there is under the holdings in Clarkson v. Ruiz, Tex. Civ.App., 108 S.W.2d, 281; Greathouse v. Ft. Worth & D. C. R. Co., Tex.Com.App., 65 S.W.2d 762; and Missouri-Kansas-Texas R. Co. v. Pluto, Tex.Com.App., 156 S.W.2d 265. The first cited case is one involving the partition of land and is clearly not in point here. The other two involve compromise settlements between the plaintiff, for himself and as next friend of the minor, wherein either a fraud was perpetrated upon the minor or his legal rights clearly prejudiced by the settlement. The issues involved in those cases were patently different from the one here presented. The suit as here brought, as tried, and the judgment as here rendered, is clearly authorized and contemplated by Arts. 1994 and 4675, R.C.S., 1925; and Art. 4677, R.C.S., Vernon's Ann.Civ.St. Arts. 1994, 4675, 4677, expressly provides that the jury may proportion the damages between the parties entitled to such recovery. There is no contention that the interests of the minors were not fully protected, or that the jury did not properly apportion the damages in the instant case. While we think the statutes themselves are conclusive against this contention, we cite, without further discussion here, the following authorities as also concluding the matter: Taylor v. San Antonio Gas & Electric Co.,

Tex.Civ.App., 93 S.W. 674, writ refused; Humble Pipe Line Co. v. Kincaid, Tex. Civ.App., 19 S.W.2d 144, writ refused; and Wilson v. Fisher, Tex.Civ.App., 105 S.W.2d 304, writ refused.

One other contention made relates to the manner in which the special issues presenting plaintiffs' theory of the case were framed. Appellant contends that the inquiry as to whether the various acts found by the jury to have been committed by appellant's driver, which they also found constituted negligence, were a proximate cause of the death of Polanco's wife, was a comment on the weight of the evidence, in that there was evidence from which the jury could have found that her death was caused by failure to procure medical attention for her within a reasonable time after the collision, rather than from the injuries received. It is true that there was such evidence. But the form of the inquiries submitted are not subject to the objection lodged against them. Had there been any question that the acts charged and the negligence found were the cause of the injuries received, then appellant's contention might be correct. But it was not controverted that the injuries resulted from the collision. The inquiry then was, whether the collision was due to the negligent acts of appellant's driver; and whether death resulted from such negligent acts or from lack of prompt medical attention. It was not necessary to submit undisputed facts to the jury. It was only necessary to submit issues as to whether the negligent acts, first submitted to and found by the jury, proximately caused death; or whether death resulted from some other cause. The issues of lack of medical care as causa mortis were submitted at appellant's request and found against him, consequently he was not denied a proper presentation of his defense. And because the source of deceased's injuries was not disputed, it was not improper to submit to the jury merely the questions of whether the negligent acts proximately caused her death. That was the ultimate fact issue to be determined. 41 Tex.Jur., § 278, p. 1112, and § 291, p. 1137.

For the reasons stated the judgment of the trial court is reversed and the cause remanded for another trial.

## On Appellees' Motion for Rehearing.

Appellees urgently insist in their motion for rehearing that the testimony of the jurors on the motion for a new trial presented a conflict on the fact issue of whether the jurors, notwithstanding their agreements first reached, designedly answered the special issues so as to accomplish such result; and that by overruling said motion the trial court found such fact against such contention. This, in large measure, is predicated upon the answers of such jurors on cross examination that they answered each question according to the evidence without regard to such recovery. Consequently that our holding is in conflict with numerous cited cases of which Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, and Waggoman v. Ft. Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.2d 1005, are typical.

We have accordingly again carefully read the testimony of such jurors. In addition to the matters mentioned in the original opinion, it appears that the jury were confused about how to answer the issue as to whether appellees' truck had a side reflector. One juror testified that all of the jurors were of the opinion that it did not; but that they concluded that the answer thereto was immaterial, and so answered it to the contrary. This in itself constituted misconduct. Walker v. Quanah, A. & P. R. Co., Tex.Com.App., 58 S.W.2d 4; Allcorn v. Ft. Worth & R. G. R. Co., Tex.Civ.App., 122 S.W.2d 341; 31 Tex.Jur., § 47, p. 55. And where acts of misconduct are proved "scant attention will ordinarily be paid to declarations of jurors that they were not affected by the wrongful conduct." 31 Tex.Jur., § 49, p. 57, and cases cited.

Taking the testimony of the jurors in connection with what the record otherwise affirmatively discloses, we are of the opinion that misconduct of the jury was conclusively shown; and that it was not a disputed fact issue on conflicting evidence. Likewise it does not appear that it did not reasonably affect the rights of the defendant. Such misconduct therefore requires a reversal of the judgment irrespective of whether the argument complained of constitutes reversible error or not. The motion is therefore overruled.